## Case No. 3,521.

### CUTTING v. SEABURY et al.

[1 Spr. 522; 23 Law Rep. 533.][1]

District Court, D. Massachusetts. Oct. Term, 1860.

ADMIRALTY JURISDICTION—ACTION FOR WRONGFUL DEATH.

1. Where a minor left his father's service and went to a port where he was a stranger, and there shipped as of full age, for a whaling voyage, during which he perished: *Held*, that the father could not maintain an action for the loss of the services and society of the son arising from his death, unless the person who shipped him knew that he was a minor.

[Cited in The G. H. Starbuck, Case No. 5,- 378; The Epsilon, Id. 4,506; Baird v. Daly, 57 N. Y. 248; The Sea Gull, Case No. 12,- 578; Holmes v. Oregon & C. Ry. Co., 5 Fed. 80; The Garland, Id. 926; The Hattie

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

Low, 14 Fed. 880; The Manhasset, 18 Fed. 925; The Columbia, 27 Fed. 720.]

2. It cannot be considered as settled law, that no action can be maintained for damages occurring from the death of a human being.

[Cited in American Steamboat Co. v. Chace, 16 Wall. (83 U. S.) 532; The Towanda, Case No. 14,109; The Charles Morgan, Id. 2,618; Hollyday v. The David Reeves, Id. 6,625; The Garland, 5 Fed. 926; Re Long Island N. S. P. & F. Transp. Co., Id. 608; The E. B. Ward, 17 Fed. 458; The Max Morris, 28 Fed. 884; The Harrisburg, 119 U. S. 206, 7 Sup. Ct. 144.]

[See note at end of case.]

R. C. Pitman, for libellant.
Wm. W. Crapo, for respondents.

SPRAGUE, District Judge. In September, 1850, the minor son of the libellant left his father's employment in Palmer, Massachusetts, went to New Bedford, and there representing himself as of full age, was shipped by the defendants for a whaling voyage. The vessel sailed soon afterwards, and when last heard from was in the Arctic ocean, in the autumn of 1853, and is believed to have there perished, with all on board. In the spring of 1855, the libellant went to New Bedford and made a settlement with the respondents, the extent of which is in controversy. On the 6th of July, 1860, this suit was commenced, after a few days' previous demand. When a minor is knowingly withdrawn from the service, society and control of his father, the latter may have an action, not only for the value of his services, but damages for the loss of his society, and of the opportunity of directing his education and training. The libellant admits that he has received compensation for the services of his son while on board of the vessel, and he prosecutes this suit to recover damages for the loss; that is, the death of his son; which damages are alleged in the libel to consist in being deprived of the "services, comfort and society" of his child, from the time of his death until his minority would have expired.

Upon this several questions arise:—1st. Can a suit for damages ever be maintained for the death of a child? 2d. If ever, can it be upon the facts of this case? 3d. Was this claim embraced in the settlement made in 1855? 4th. Is it a stale claim, and to be rejected for that reason?

Upon the first question, whether a suit can ever be maintained by a parent for the death of a child by the wrongful act of another, the authorities are not agreed. In Carey v. Berkshire R. Co., 1 Cush. 475, the supreme court of Massachusetts decided against the action, and rested their decision upon the absence of any English authority in favor of such a claim, and upon the opinion of Lord Ellenborough, in Baker v. Bolton, 1 Camp. 493, where he declared that "in a civil court, the death of a human being cannot be complained of as an injury."

By act of 9 & 10 Vict. c. 93, an action is given for the benefit of those who may sustain damage by the death of a person, caused by the wrongful act of another. This shows that parliament were of opinion that there ought to be a remedy in such case, and that none previously existed. The Massachusetts statute of 1840, c. 80 [1 Laws (N. S.) 224], is quite different from the English. It imposes in certain cases, a fine to be recovered by indictment, for the benefit of the representatives of the deceased. In Ford v. Monroe, 20 Wend. 210, damages were recovered by the father of a minor, who had been killed by the negligence of the defendant's servant. But the objection, that no action for the death of a person would lie, was not raised, nor does it appear by the report, that any such question was even adverted to. In James v. Christy, 18 Mo. 162, where a minor was killed on board of a steamboat by a defect in the machinery, a suit for the loss of his services by the administrator of the father, was maintained against the owner of the boat.

The weight of authority in the common law courts seems to be against the action, but natural equity and the general principles of law are in favor of it. It is not controverted that, if a father be wilfully and wrongfully deprived of the services, society and control of his minor son, he may maintain an action against the wrong doer, if the son survive. Why, then, if the same wrong be done by superadding the infliction of the death of the child, should his right of action be lost? By the civil law, and by the laws of France and Scotland, such an action can be maintained. This is admitted in 1 Cush. 480. The common law to some extent, that is, as to deaths occasioned by a felony, was formerly, at least, different. How is this difference to be accounted for? Upon what reasons did it rest? I think it may be legitimately traced to the feudal system and its forfeitures.

The doctrine, that, where death is occasioned by a felonious act, the private wrong is merged in the felony, is often laid down by writers, and has been judicially decided. It is recognized, as if still in force, by Judge Story, in Plummer v. Webb [Case No. 11,233]. But the reason for it has not accompanied its annunciation. It must be found in the law by which all the property of the felon, real and personal, was forfeited to the crown. This left nothing to satisfy the claims of private justice. It would have been idle to maintain an action which could afford no redress.

By the feudal system, all estates were deemed to be held by grant from the king, as paramount lord, upon numerous conditions; the most familiar of which were service and fealty. Felony was a violation of a condition of tenure, and a forfeiture was thereby incurred. The paramount right of the crown took all the property of the felon, and thus absorbed all means of redress, and left the injured vassal, or subject, remediless.

The forfeitures have been abrogated. The

competition between the prerogative of the sovereign and private right, by which the latter was overborne, no longer exists. Why then should not the latter now prevail? The only answer which has been given is, that there is no principle of the common law, by which a person injured by the death of another, can have remedy by suit. To this I am loth to assent. The common law recognizes, and is pervaded by, the great principles of natural justice, one of which is, that for every wrong there should be a remedy. The operation of these principles is often obstructed by the political organization of the state, and this was especially so while the civil polity was feudal. So far as that system has been abolished, the restraint upon private rights, which its existence required, should no longer remain, but the beneficent principles of the common law should spring into free and full action.

When a main portion of an old feudal castle is swept away by the hand of modern improvement, its props and appendages should follow, especially, if the change has rendered them a mere nuisance and deformity. We should regard the unwritten law, as animated by all pervading principles of individual justice,—ready by their own energy to expand into new applications, when artificial restraints or obstructions by public policy are removed. It may thus be made, in a great measure, to meet the wants of a progressive civilization.

The doctrine laid down by Lord Ellenborough, in Baker v. Bolton, 1 Camp. 493, is not limited to cases of felony, but embraces all deaths. How is such extension to be accounted for? It may have arisen from that passion for generalization which has so frequently led judges to lay down broad propositions, extending a rule of law far beyond the foundation on which it rested; or, it may be that, by the ancient common law, no action could be maintained by a father for the infringement of parental rights by the act of another, unless it was accompanied with that intent or wilfulness which, if death ensued, would make the offence manslaughter at least; that is, felony. In such state of the law, if the act had not the ingredient of an intent which might make it felony, then no action could be maintained, even if death did not ensue, and if it had that element, and death ensued, then there was a felony and consequent forfeiture.

As the law is now understood, a father may maintain an action for the violation of his parental rights, if the son survive the injury, although the wrong would not have been a felony, if he had died. Surely there is now no reason why an action for the same act should not be maintained, when to the injury is added the calamity of the death of the son. The question is not one of local law, but of general jurisprudence, and I cannot consider it as settled, that no action can be maintained for the death of a human being. But I am not under the necessity of deciding that question, because there is another objection which is fatal to this suit. It does not appear that the respondent knew that the son was a minor when he was shipped. He was a stranger to the respondent, and offered himself for the service, and was shipped as a person of full age. This libel is for a tort. It is not to recover the value of services received by the respondent, but for the death of the son in a voyage for which he had been wrongfully engaged and sent. Knowledge of the minority seems to be essential to the maintenance of such an action.

In Sherwood v. Hall [Case No. 12,777], it was held by Judge Story, that a master taking a minor on board of a vessel, knowing him to be such, renders the owners liable to the father, not only for the loss of service, but also for extra expenses and losses, the knowledge of the master being constructive notice to the owner. In Plummer v. Webb [Case No. 11,233], Judge Story says, if a minor be "by force or fraud, by abduction or seduction, withdrawn from the power or protection of the father," he is entitled to an action for the tort. In Butterfield v. Ashley, 6 Cush. 250, it is said by the court, enticing away, employing or harboring a servant, entitles the master to an action, but it is a material allegation that the defendant knew that he was the servant of the plaintiff. In Butterfield v. Ashley, 2 Gray, 254, the court say that, if the defendants, "knowing that the said Charles H. was the son and servant of the plaintiff, unlawfully received him, then being such servant, into their service, and harbored, detained and kept him," an action by the father would lie. In all these cases, the court seemed to have considered knowledge of the minority by the defendant, essential to the maintenance of an action, by the father, for a wrong. Such also seems to have been the view of the learned judge in The Platina [Case No. 11,-210].

My decision must be in accordance with the authority of the circuit court of the United States, and the supreme court of Massachusetts, and this suit, therefore, cannot be maintained.

The two remaining objections, viz., the settlement and the lapse of time, I do not think it necessary to consider. I would observe, however, that the evidence leaves it somewhat doubtful, whether the settlement did not embrace all the claims arising out of the shipment of the son, and considering this fact, and the lapse of time, as well as the nature of the claim, the objection of staleness would deserve careful consideration, if the decision turned upon that point. The libel must be dismissed, but considering the hardship of the case, the libellant having received only $100 in the settlement. I shall not subject him to costs. Libel dismissed without costs.

[NOTE. In the case of The Harrisburg, 119 U. S. 206, 7 Sup. Ct. 144, it was settled that a suit in admiralty cannot be maintained in the courts of the United States to recover damages for the death of a human being, independently of statute.]