GOODENOUGH v. McCOID AND PHILLIPS.

1. **Intoxicating Liquors**: LIEN: MORTGAGE. The lien of a judgment for damages for the sale of intoxicating liquors, in an action instituted under section 1557 of the Code, does not take priority over the lien of a mortgage executed before the judgment was rendered.

*Appeal from Harrison Circuit Court.*

WEDNESDAY, DECEMBER 6.

ON the 8th day of February, 1876, plaintiff filed her petition claiming of one Thomas McGrew damages for selling spirituous liquors to her husband, within the four preceding months. The petition alleges that the defendant, McCoid, owned the premises upon which the liquors were sold, and that McGrew dealt in intoxicating liquors therein with

McCoid's knowledge and consent.    An amendment to the petition alleged that the defendant, Phillips, holds the assignment of a mortgage given to McCoid on the premises in question, and prays that any lien he may have may be declared subject to the lien of plaintiff's claim.

The defendants allege that McCoid Bros., of which firm James McCoid was a partner, sold the premises in question to Thomas McGrew, and took a mortgage for the unpaid purchase money, which mortgage was afterward, for a valuable consideration, assigned to the defendant, J. M. Phillips.

The plaintiff replies that the deed from McCoid to McGrew is fraudulent, without consideration, and for the purpose of evading the liquor law, and that Phillips took the mortgage with full knowledge of all these facts.    At the March term, 1876, the cause came on for trial as to the issue joined between plaintiff and the defendant, McGrew, but the record is silent as to what judgment was rendered.

As to McCoid and Phillips the cause was continued, to be tried by the judge in vacation, as an equitable action.

The cause was submitted to the court pursuant to this agreement, upon written evidence taken in the form of depositions, and it was decreed by the court " that the judgment of plaintiff be a lien upon the property in controversy, paramount to defendants' mortgage."

The defendants appeal.

*Clinton, Hart & Brewer*, for appellants.

*Hart & Cochran*, for appellee.

DAY, J.—The evidence clearly establishes the existence of the following facts:  On the 20th day of November, 1875,

1. INTOXICA-TING liquors: lien: mortgage.

James McCoid, the then owner of the premises, sold the same to McGrew for $1,500, who at the time paid $75 of the purchase money, and took possession, and agreed to secure the deferred payments by mortgage upon the property.  On the same day a deed for the premises from McCoid and wife was prepared, signed and

acknowleged. A mortgage back from McGrew and wife, to secure the deferred payments, was prepared, bearing the same date, but was not at the time signed. The deed and mort-gage were left with W. H. Davis, the attorney and notary public who prepared them. Because of his sickness the mort-gage was not signed until the 14th day of January, 1876, when the mortgage and deed were delivered. On the 17th day of January, 1876, the mortgage, for a valuable considera-tion, was assigned to J. M. Phillips, without recourse. McCoid had no knowledge that McGrew intended to use the premises in violation of the liquor law.

The plaintiff claims that she is entitled to this lien under section 1558 of the Code, which is as follows: "For all fines and costs assessed, or judgments rendered of any kind, against any person for any violation of the provisions of this chapter, the personal and real property, except the homestead as now provided by law, of such person, as well as the premises and property, personal or real, occupied and used for that pur-pose with the consent and knowledge of the owner thereof or his agent, by the person manufacturing or selling intoxi-cating liquors contrary to the provisions of this chapter, shall be liable, and all such fines, costs or judgments, shall be a lien on such real estate until paid."

In order to ascertain the proper construction of this section it is necessary to determine what property is liable for a vio-lation of the provisions of this law, and at what date a lien attaches to such property for the violation.

1. The personal and real property, except the homestead, of the person violating the law is liable.

2. The personal or real property of any other person, with his knowledge and consent used by the person violating the law, for any of the prohibited purposes, is liable.

3. All *such* fines, costs, or judgments, shall be a lien on such real estate. The word *such* clearly refers to the fines, costs and judgments enumerated in the first part of the sec-tion, namely, fines and costs assessed and judgments rendered.

It is clear, then, that the lien does not attach at the time the party violating the law does an act which renders him liable

to fine, costs or a judgment, but at the time the fine or costs are assessed or the judgment is rendered.

The next pertinent inquiry is, what were the relations of McCoid and McGrew, on the 20th day of November, 1875, to the property in controversy, and their respective rights with reference to it? On that day McGrew purchased the property, paid seventy-five dollars of the purchase money, and took possession. He became the equitable owner, and was, under his contract, entitled to an immediate conveyance of the legal title, upon condition of executing a mortgage to secure the deferred payments. McCoid was trustee of the legal title, and had a lien upon the premises for the unpaid purchase money. *Johnson v. McGrew*, 42 Iowa, 555. McGrew, in possession as the equitable owner, and entitled to a conveyance of the legal title had, while so in possession, the independent use, management and control of the property. If he used it for the unlawful traffic in intoxicating liquors, as his property, it became liable for any fines or costs that might be assessed, or judgments that might be rendered against him. But for such fines, costs or judgments, the property would not become liable to the prejudice of a prior lien. The relation of McCoid to this property is not that of an owner, consenting that it may be used for an unlawful traffic in liquors, but that of a mortgagee. Suppose that McGrew had previously owned this property, and that, on the 20th day of November, 1875, he had executed to McCoid a mortgage to secure borrowed money; it seems quite clear that he could not afterward, by any unlawful use of the property, create a lien which would take precedence of the lien of the mortgagee. Or, for a case more nearly analogous to the case at bar, suppose that on the 20th day of November, 1875, a deed of conveyance had been made to McGrew, and he had executed back a mortgage to secure the deferred payments, and taken possession, could he make any use of the property which would deprive the mortgagee of the benefit of his lien for unpaid purchase money? Manifestly, it seems, he could not. But this proceeding is in equity, and the equitable rights of the parties are the same as

if the deed and mortgage had been executed and delivered on the day of the sale.

Indeed, the case last supposed is altogether analogous to the case at bar, for, as we have seen, the lien attaches when the fine and costs are assessed, or the judgment is rendered. The deed and mortgage were delivered on the 14th day of January, 1876; at that time no lien had attached, for no judgment had been rendered; in fact, the evidence does not even show that the law had been violated at that time. It seems to us that the court erred in giving priority to the plaintiff's lien. It is true, if the transaction between McCoid and McGrew were fraudulent and merely colorable, for the purpose of violating the liquor law and defeating its provisions, the property should not escape liability; but the evidence does not warrant a finding that the transaction was fraudulent.

REVERSED.