## Case No. 14,109.

### The TOWANDA.

[34 Leg. Int. 394; 23 Int. Rev. Rec. 384; 5 Cent. Law J. 418; 13 Phila. 464; 12 Am. Law Rev. 401; 25 Pittsb. Leg. J. 59.] [1]

Circuit Court, E. D. Pennsylvania. Oct. 22, 1877.

ADMIRALTY—JURISDICTION—DEATH BY WRONGFUL ACT—SUIT BY WIDOW.

The United States district court has jurisdiction in admiralty of a libel for damages for the death of the husband of libellant, who was chief mate, and whose death was the direct re-

---

[1] [Reprinted from 34 Leg. Int. 394, by permission. 12 Am. Law Rev. 401, contains only a partial report.]

sult of the negligence of the steamer in causing the collision.

[Cited in The Charles Morgan, Case No. 2,-618; Hollyday v. The David Reeves, Id. 6,625; The Garland, 5 Fed. 926; The Harrisburg, 15 Fed. 614; The E. B. Ward, 17 Fed. 458; The Harrisburg, 119 U. S. 207, 7 Sup. Ct. 143.]

[See Armstrong v. Beadle, Case No. 541.]

[Appeal from the district court of the United States for the Eastern district of Pennsylvania.

[This was a libel by Mary Helmsley against Coggins, master of the Towanda, to recover damages to her resulting from the death of her husband in a collision between the Towanda and the H. P. Blaisdell. From a decree of the district court in favor of libellant (case unreported), respondent appealed.]

James B. Roney and R. C. McMurtrie, for appellant.

George P. Rich, for appellee.

McKENNAN, Circuit Judge. A statement of facts has been agreed upon in this case, by which it appears that the steamship Towanda, belonging to Philadelphia, on the night of May 10th, 1876, on the high seas, about twenty miles from Cape Hatteras, ran down and sank the schooner, H. P. Blaisdell. In pursuance of proceedings in admiralty in the district court, the steamship was condemned and sold, and the proceeds brought into court for distribution among those entitled to damages for losses occasioned by the collision. The husband of the appellee was the chief mate on the schooner, and was drowned, "his death being the direct result of the negligence of the steamer in causing the collision." The district court entertained her intervening libel, praying for an allowance out of the fund in court, of damages for the injury resulting to her by the death of her husband, and awarded her therefor the sum of $1,500. The jurisdiction of the court to entertain this libel is the only question in the case. The competency of the court to redress the injury complained of is denied upon the ground that the right to it had no existence at common law, but is purely statutory, and it is not, therefore, a subject of admiralty cognizance.

The jurisdiction of the admiralty courts embraces all torts committed on the high seas, and, if the nature of the alleged wrong entitled the appellee to redress at all, the locality of its commission brought it within the rightful cognizance of the court. The denial of the right to compensation for personal injuries resulting in death seems to have its authoritative source in the declaration of Lord Ellenborough in Baker v. Bolton, 1 Camp. 493, that "in a civil court, the death of a human being cannot be complained of as an injury." While the weight of authority in the common law courts is, perhaps, in favor of the principle thus stated, it has not been adopted with uniform sanc-

tion even by them. In Ford v. Monroe, 20 Wend. 210, damages were recovered by the father of a minor, who had been killed by the negligence of the defendant. But it does not appear that any question was made or adverted to that the action could not be maintained. In James v. Christy, 18 Mo. 162, where a minor was killed on board a steamboat by a defect in the machinery, a suit for the loss of his services, by the administrator of his father was maintained against the owner of the boat. In Sullivan v. Union Pac. R. Co. [Case No. 13,599], Judge Dillon fully considers the cases on the subject, and concludes that an action for such an injury is maintainable. As was said by Judge Sprague in Cutting v. Seabury [Id. 3,521]: "The question is not one of local law, but of general jurisprudence, and I cannot consider it as settled, that no action can be maintained for the death of a human being, * * * but natural equity and the general principles of law are in favor of it." These declarations received the decided approval of Chief Justice Chase in The Sea Gull [Id. 12,578], in which he said: "And certainly it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules," and declining to follow the common law cases on the subject, said: "But these are all common law cases, and the common law has its peculiar rules in relation to this subject, traceable to the feudal law and its forfeitures." He therefore overruled a plea to the jurisdiction, and rendered a decree in favor of a husband, whose libel claimed damages against a vessel for injuries resulting in the death of his wife. So, also, in The Highland Light [Id. 6,477], he held that the widow and son of a hand killed on a steam-vessel by the negligence of the engineer, had suffered an injury for which they might have redress in admiralty.

Whatever, therefore, may be the course of the decisions of common law courts touching this question, the better opinion seems to be, that "the human providence which watches over the rights and interests of those who go down to the sea in ships, and do their business on the great waters," ought to afford redress for all the injuries to which they are unlawfully subjected. The exercise of such a jurisdiction by courts of admiralty is at least consonant with "natural equity and the general principles of law," and with the benign spirit of English and American legislation on the subject. The decree of the district court is therefore affirmed.

————

TOWER, Ex parte. See Case No. 1,085.

TOWER (BARTON v.). See Case No. 1,085.

TOWER (LINCOLN v.). See Case No. 8,355.

TOWERS (McCALL v.). See Case No. 8,674.

TOWERS (MUNROE v.). See Case No. 9,-930.

TOWERS (SHEAN v.). See Case No. 12,731.