## HOLMES *v.* O. & C. RY. Co.

(*District Court, D. Oregon.* ——, 1880.)

1. DEATH, ACTION FOR —Although an action may not lie at common law to recover damages for the death of a person, it will at the civil law, and therefore *semble* that it will in admiralty.

2. MARINE TORT.—A marine tort is one that occurs on any public, navigable water of the United States, whether caused by a wrongful act or omission, and the proper district court, as a court of admiralty, has jurisdiction of a suit to recover damages therefor.

3. RIGHT GIVEN BY STATE STATUTE.—The jurisdiction of the national courts does not always, nor often, depend upon the origin of the rights of the parties; and where a state statute gives a right, the same may be asserted or enforced in such courts whenever the citizenship of the parties or the nature of the subject will permit.

4. SAME.—The right given by section 367 of the Oregon Civil Code to an administrator, to recover damages on account of the death of his intestate from the party by whose act or omission such death was caused, may be enforced in the national courts.

5. SAME.—SUIT IN ADMIRALTY.—When a passenger on the railway ferry-boat, plying accross the Wallamet river between East Portland and Portland, was drowned by reason of the negligence of the owner of the boat or its servants, a marine tort was committed, for which a suit may be maintained in the district court by the administrator of the deceased to recover the damages given therefor by section 367, *supra.*

In Admiralty.

*Sidney Dell,* for libellant.

*Joseph N. Dolph,* for defendant.

DEADY, D. J. This suit is brought to recover the sum of $4,900, on account of the death of William A. Perkins, the libellant's intestate, alleged to have been caused by the negligence of the defendant on November 16, 1868, while transporting said Perkins across the Wallamet river, at Portland, on the defendant's duly enrolled steam ferry-boat Number One.

Substantially, the libel alleges that on September 17, 1879, by the order of the county court of Jackson county, Oregon, the libellant was duly appointed administrator of the estate

of said Perkins, and that pursuant thereto he duly qualified as such administrator and received letters of administration upon said estate, duly issued by the clerk of said court; that on said November 16th the defendant, as owner of said ferry-boat, was engaged in carrying passengers, for hire, across said Wallamet river, between East Portland and the foot of F street, in Portland, the same at said point being a public navigable river of the United States, and within the ebb and flow of the tide; that at 7 p. m. of said day said Perkins took passage on said boat at East Portland, and by reason of the defective condition thereof, and the negligent and unskilful manner in which the west landing was made, the darkness of the night, the want of lights and guards, said Perkins was there "precipitated" into the river and drowned.

The defendant has taken 62 exceptions to the libel for "surplusage, irrelevance, and impertinence," which appear to include the whole of it; and also an exception, for the same causes and for repetitions therein, to the libel as a whole. According to rule 36 of the admiralty rules, "exceptions may be taken to any libel, allegation, or answer for surplusage, irrelevancy, impertinence, or scandal; and if, upon reference to a master, the exception shall be reported to be so objectionable, and allowed by the court, the matter shall be expunged at the cost and expense of the party in whose libel or answer the same is found." On the argument no specific portion of the libel was pointed out as impertinent, except a brief allegation concerning the danger incurred by other passengers on the same occasion, but it was insisted generally that the case of the libellant was stated with unnecessary particularity and repetition.

In admiralty, particularity in pleading is not generally considered a fault, but the reverse. The rule is that the pleader must state all the essential particulars of the alleged tort or misconduct with the circumstances of time and place. Ben. Ad. 486-7; 2 Pars on Ship. & Ad. 381; Ad. Rule 23; The Clement, 2 Curt. 366; Mocomber v. Thompson, 1 Sum. 385; The Quickstep, 9 Wall. 670; The Syracuse, 12 Wall. 173. I do not think this libel is objectionable for impertinence,

and therefore disallow these exceptions at the cost of the defendant.

Exceptions are also taken to the libel that it is informal and insufficient, because it does not appear—*First,* that the libellant has capacity to institute or prosecute this case; *second,* that he is the duly qualified administrator of said Perkins; *third,* that he has sustained any damage, or that the defendant is indebted to him; and, *fourth,* that the subject-matter of the suit is not within the jurisdiction of the court. These exceptions in admiralty are in the nature of special demurrers at common law. The first and second exceptions are substantially the same, and only make the objection that, upon the face of the libel, the libellant is not the qualified administrator of the deceased, and therefore not entitled, as such, to maintain this suit. Now, the libel not only states expressly that the libellant is the duly qualified administrator of the deceased, but sets forth every particular fact necessary to make him so. These exceptions are disallowed also. In support of the third exception it is contended that the death was not caused by a marine tort because it took place in the course of the performance of a contract mainly to be performed on land. This argument assumes what does not appear upon the face of the libel, but it is well understood that Perkins was not only a passenger on the defendant's boat on the trip across the Wallamet river when the death occurred, but also on its railway from some point north of Roseburg, and that the transportation across the river was merely incidental to or an insignificant part of the contract to convey the deceased to Portland. Admitting, however, that such was the fact, it does not affect the result.

The jurisdiction of courts of admiralty in cases of torts depends wholly upon locality. Where a tort is committed upon a public navigable water of the United States, it is a marine tort, within the jurisdiction of the proper admiralty court. The term "torts" includes wrongs suffered in consequence of the negligence or malfeasance of others, when the remedy at common law was by an action on the case. *Waring* v. *Clarke,* 5 How. 451; *The Gennessee Chief,* 12 How. 450;

*The Philadelphia, etc., Ry. Co.* v. *The Philadelphia, etc., Towboat Co.* 23 How. 214; *The Commerce,* 1 Black, 575; *The Belfast,* 17 Wall. 637; *Insurance Co.* v. *Dunham,* 11 Wall. 25.

This voyage, upon which this death occurred, being made upon a public, navigable water of the United States, it matters not whether the boat was running in connection with a railway or otherwise, or whether it was plying up or down the stream, or *across* it. The length or direction of the voyage, or its relation to other means or modes of transportation, in no way affect the fact stated in the libel, and upon which the jurisdiction of the court of admiralty alone depends, that the tort was committed upon the public navigable water of the United States.

Upon this and the remaining exception two other points are made by counsel for the defendant, namely: (1) That in admiralty, as at common law, no action is maintainable for the wrongful death of another; and (2) that the damages given by section 367 of the Oregon Civil Code, for the death of a person "caused by the wrongful act or omission of another," cannot be recovered by a suit in admiralty or otherwise than by an action at law in the state court; and upon these the contention mainly turns.

It is admitted that it came to be the rule at common law that an action will not lie to recover damages for the death of a human being. The maxim, *"Actio personalis moritur cum persona,"* was held to apply. It is also admitted that the weight of authority in this country is with the English rule. But it is not admitted that the rule is founded in reason or is consonant with justice.

The earliest English case is *Higgins* v. *Butcher,* Yelv. 89, in which it was held that a master could not maintain an action for the death of his servant, feloniously caused, for the reason that the private injury was merged in the felony. But this would not apply to a case where the death was caused by negligence, not criminal, and at this day would not be held sufficient to defeat the private remedy, when it otherwise existed.

Afterwards (1808) Lord Ellenborough, in *Baker* v. *Bolton,*

1 Camp. 493, said at *nisi prius*, in a case by a husband for the death of his wife, caused by injuries received in the upsetting of the defendant's coach that "in a civil court the death of a. human being cannot be complained of as an injury." The subsequent cases, both English and American, appear to rest upon the authority of *Baker* v. *Bolton*, and the absence of any precedent or *dictum* to the contrary.

The right to maintain the action has been denied in several of the state courts, among others in Massachussetts in *Carey* v. *Berkshire Ry. Co.* 1 Cush. 477, and in New York in *Green* v. *Hudson Ry. Co.* 2 Keys, 294; but it has been maintained in the latter state in *Ford* v. *Monroe*, 20 Wend. 210, and in U. S. C. C. for Nebraska in *Sullivan* v. *Union Pacific Ry. Co.* 3 Dil. 341. It has also been denied in *Insurance Co.* v. *Brame*, 95 U. S. 756.

In *Sullivan* v. *Union Pacific Ry. Co.*, Mr. Justice Dillon disapproves of the common-law rule, and, speaking of the decision in *Baker* v. *Bolton*, says: "Considering that it is not reasoned and cites no authorities, and the time when it was made, and that the rule it declares is without any reason to support it, my opinion is that it ought not to be followed in a state where the subject is entirely open for settlement."

But in 1846 parliament interfered, and by the act of 9 and 10 Vict. *c.* 93, commonly called Lord Campbell's act, gave an action to the administrator for the benefit of the family on account of the death of a person caused by the "wrongful act, neglect, or default" of another; and most of the states of the Union, including Oregon, have since followed this illustrious example.

But the civil law permitted the action, and it is not admitted that in a court of admiralty, which is not governed by the rules of the common law, a suit for damages on account of the death of a person may not be maintained. In *The Charles Morgan*, 4 P. C. Law Jour. 151, the district court for the southern district of Ohio, in a suit in admiralty brought by the widow to recover damages for the death of her husband, sustained the jurisdiction, upon the ground that a majority of

the decisions in the federal courts favored it, and that it was expedient that the case should be tried on its merits before it was taken up on appeal.

In the *Steamboat Co.* v. *Chase*, 16 Wall. 532, Mr. Justice Clifford incidentally considers the question and says: "Difficulties, it must be conceded, will attend the solution of the question, but it is not necessary to decide it in this case."

In *The Sea Gull*, Chase's Dec. 146, Chief Justice Chase sustained a libel by a husband for damages for the death of his wife, caused by a collision between the Sea Gull and the Leary on the Chesapeake. In the course of his opinion he cites, with approval, the observation of Mr. Justice Sprague in *Cutting* v. *Seabury*, 1 Sprague, 522, that "the weight of authority in common-law courts seems to be against the action,"—for damages on account of the death of a person,— "but natural equity and the general principles of law are in favor of it;" and adds: "Certainly, it better becomes the humane and liberal proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules." And in *The Highland Light*, Chase's Dec. 151, which was a libel *in rem* by the widow and son of an employe on the vessel who lost his life by the collapse of a steam-chimney, the chief justice affirmed his ruling in *The Sea Gull*, and said: "The jurisdiction for marine torts in admiralty may be said to be co-extensive with the subject. It depends on the *locality* of the wrong, not upon its extent, character, or the relations of the person injured."

But it is unnecessary to consider this point further, as the libellant claims to recover under the statute of this state, (section 367, Or. Civ. Code,) which provides: "When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action at law therefor against the latter, if the former might have maintained an action, had he lived, against the latter, for an injury done by the same act or omission. Such action shall be commenced within two years after the death, and the damages therein shall not

exceed $5,000, and the amount recovered, if any, shall be administered as other personal property of the deceased person."

But the point is made by counsel for the defendant that the Oregon statute provides that the damages for the death shall be recovered by an *action at law,* and therefore they cannot otherwise be obtained, as by a suit in admiralty. But the right conferred by the statute, in whatever form of words, is essentially separate and distinct from the remedy; and it may be enforced in the proper national court according to the procedure of that forum.

In *The Highland Light, supra,* 154, it was held that the widow and son could maintain a suit in admiralty to enforce a right to damages given by a similar statute of Maryland for the death of the husband and father, caused by a tort committed upon the navigable waters of that state. In speaking of the statute the chief justice says: "The *right* is quite separate from the remedy. The right, like that of a statute lien upon a vessel for repairs in home ports, may be enforced in admiralty by its own processes. It is not necessary to pursue the statutory remedy in order to enforce the statutory right. It is clear, therefore, that, for an injury such as that proved in this case, the wife and son of the man killed may have redress in admiralty."

In *Steamboat Co.* v. *Chase, supra,* 531, Mr. Justice Clifford, in discussing the question, said: "Doubts, however, may arise whether the action survives in the admiralty, and, if not, whether a state statute can be regarded as applicable in such a case to authorize the representatives of the deceased to maintain such an action for the benefit of the widow and children of the deceased. Undoubtedly the general rule is that state laws cannot extend or restrict the jurisdiction of the admiralty courts, but it is suggested that the action may be maintained in this case without any departure from principle, as the only practical effect allowed to the state statute is to take the case out of the operation of the common-law maxim that personal actions die with the person."

v.5,no.1—6

But in *Ry. Co.* v. *Whitton*, 13 Wall. 270, which was an action brought to recover damages for the death of a person upon a statute of Wisconsin that provided whenever the death of a person is caused by "the wrongful act, neglect, or default of another," the person or corporation which would have been liable for the injury, if death had ensued, "shall be liable to an action for damages," not exceeding $5,000, "*provided, that* such action shall be brought for a death caused in this state, and *in some court established by the constitution and laws of this state,*" the supreme court held that an action to recover the damages might be maintained in the national circuit court for Wisconsin, notwithstanding the limitation of the state statute. In delivering the opinion of the court, Mr. Justice Field, after admitting that the "right of action exists only in virtue of the statute," and in the cases therein specified, says : "In all cases when a general right is thus conferred, it can be enforced in any federal court within the state having jurisdiction of the parties. It cannot be withdrawn from the cognizance of such federal court by any provision of state legislation that it shall only be enforced in a state court.    *    *    * Whenever a general rule as to property or personal rights, or injuries to either, is established by state legislation, its enforcement by a federal court, in a case between proper parties, is a matter of course, and the jurisdiction of the court, in such case, is not subject to state limitation."

Assuming that the right of action dies with the person in admiralty, as at common law, then, in my judgment, the case is in all respects analogous to those arising under state statutes giving a lien upon a domestic ship for repairs; giving half pilotage for an offer of pilotage services, or a right to a party in possession of land to maintain a suit against any one setting up an adverse claim thereto for the purpose of having such adverse claim determined. In all these cases the local law gives the right, which, like other rights, may be enforced in the proper national court, depending upon its nature or the citizenship of the parties.

If a state gives an alien a right in lands which the common law does not give him, such alien may assert such right

in the national courts as well as those of the state. The jurisdiction does not depend on the origin of the right, but the *fact* of the right and the citizenship of the parties. The rights of parties generally have their origin in the laws of the state, and, therefore, such laws furnish so far the test and measure of such rights, whether prosecuted or defended in the national or state courts. *The Orleans*, 11 Pet. 184.

The question of whether the state or national tribunals have jurisdiction does not depend upon the state or national origin of the right or title in question. If the plaintiff's citizenship is different from that of the defendant he has a right to sue in the circuit court of the United States, whether the right he asserts is of state or national origin. For the same reason, if a right is of admiralty jurisdiction, it is cognizable in the district courts without reference to the residence of the parties or the origin of the right. The maxim that the· state cannot enlarge the jurisdiction or control the process of the national courts is admitted. But, certainly, it may increase the cases in such courts by enlarging the class of persons or things included in their jurisdiction.

For instance: By the general maritime law of the United States material-men have no lien upon a vessel for supplies furnished her in the home port; but, in the absence of legislation by congress, the state may give a lien in such cases, and, the contract and service being a maritime one, the *right* thus acquired may be enforced in the district court. *The Planter*, 7 Pet. 324; *The Lottawana*, 21 Wall. 579. Congress, by virtue of its power to regulate commerce, may pass laws governing pilots and pilotage; but until it does so the state may make regulations on the subject. Suits for pilotage are of admiralty jurisdiction; but by the general marine law compensation cannot be recovered upon a mere tender and refusal of pilot services. ·Yet many of the states having found it necessary, in maintaining a body of skilful and daring pilots upon the pilot grounds within their limits, to provide that the pilot first tendering his services to a vessel thereon should receive, if refused, half pilotage, there was thus created in favor of the pilot so tendering his services a

claim for pilotage which belonged to the admiralty jurisdiction, and might be enforced in the district court. The *origin* of this right is in the state law, but the *nature* of it authorizes the party in whose favor it exists to sue in the admiralty court. *The Wright,* 1 Deady, 597; *The California,* 1 Saw. 467; *The Steam-ship Company* v. *Joliffe,* 2 Wall. 457; *Ex parte McNeil,* 13 Wall. 236. In the last case (243) Mr. Justice Swayne, speaking for the court, says: "It is urged further that a state law could not give jurisdiction to the district court. That is true. A state law cannot give jurisdiction to any federal court; but that is not a question in this case. A state law may give a substantial right of such character that, where there is no impediment arising from the residence of the parties, the right may be enforced in the proper federal tribunal, whether it be a court of equity, of admiralty, or of common law. The statute in such cases does not confer jurisdiction. That exists already, and it is invoked to give effect to the right by applying the appropriate remedy."

Owing to the anomalous state of the titles to land in Kentucky, a statute of that state, passed in 1796, gave to the person in possession of real property and having a title thereto the right to maintain a suit in equity against any person setting up a claim thereto for the purpose of determining such claim, without being compelled to wait for such person to assert such a claim at law.

This statute enlarged the class of cases in which a party was entitled to relief in a court of equity by obtaining a decree to quiet the title to lands. Proving beneficial, the substance of it has since been adopted in many of the states and now constitutes section 500 of the Oregon Civil Code. It gave a new right, which from its nature was and is properly enforceable in a court of equity, as well of the nation as of the state, wherever the citizenship of the parties gives the former jurisdiction. *Curtis* v. *Sutter,* 15 Cal. 262. In *Clark* v. *Smith,* 14 Pet. 200, the supreme court held that the right conferred by this statute could be asserted in the courts of the United States as well as in those of the state. In *Lorman* v. *Clark,* 2 McLean, 569, the court held that a statute of Michigan,

which gave a judgment creditor the right to maintain a suit in equity to subject his debtor's property to the payment of the judgment was a right which could be enforced in the courts of the United States, saying: "The courts of the United States, in the exercise of their chancery powers, will enforce equitable rights, whether they originate by contract, by local usage, or by *the statutes of the state.*" The case of *Fitch* v. *Creighton*, 24 How. 160, is to the same effect. Some question is made by the defendant as to the right of the administrator existing by virtue of the laws of Oregon to maintain this suit in this forum, and the case of *Mackay* v. *The Cent. Ry. of N. J.* 4 FED. REP. 617, is cited by counsel in support of the objection. This was a case on all fours with the one under consideration, except that the action was at law in the circuit court of New York under a statute of New Jersey, while the plaintiff was appointed administratrix of the deceased under the laws of New York. The court held that the right of the New York administrator was limited by the laws of New York, and that the right to recover the damages on account of the death of the deceased was only conferred by the statute of New Jersey upon an administrator appointed under its laws, and therefore dismissed the action. But no question was made but that the administrator appointed under the laws of New Jersey might maintain an action upon the statute in the proper United States court. But in this case the plaintiff is appointed administrator under the laws of Oregon, and the statute in question expressly confers upon him the right to recover damages for the death of his intestate. He sues as the trustee of an express trust to recover a fund for the benefit of those among whom the law will distribute the estate of his intestate.

It is also objected that it is not explicitly stated in the libel that the death was caused without the fault of the deceased. The libel states that the death was caused by the negligence of the defendant, and details the facts and circumstances of the transaction, from which it reasonably appears that it must have occurred *wholly* from such neglgence. My impression is that the libel is sufficient in this respect, and that if the defendant wants to raise the question of contributory negli-

gence on the part of the deceased it must do so by a defensive allegation to that effect. *Ry. Co.* v. *Gladmon,* 15 Wall. 401.

The only case cited upon this point is *Murphy* v. *The C., R. I. & P. R. Co.* 44 Iowa, 661. In this case the contributory negligence of the deceased appears to have been pleaded as a defence, but upon the close of the plaintiff's evidence the court below, upon the motion of the defendant, directed the jury to find for it, because it appeared from such evidence that the deceased was "guilty of such negligence as contributed proximately to the accident;" and this instruction was affirmed on appeal. The case is not in point. In the judgment of the court the plaintiff's evidence anticipated and established the defendant's defence.

In conclusion, the tort which caused the death of Perkins, having occurred upon a navigable water of the United States, is a marine one; and, even if the maritime law does not give a remedy for the wrong, the law of the state having given the right to the administrator to recover damages therefor, this court, as a court of admiralty, has jurisdiction of a suit to enforce such right.

These exceptions are also disallowed.