## THE GARLAND.

*(District Court, E. D. Michigan. February 21, 1881.)*

1. DEATH—DAMAGES.

Although by the common law, and apparently also by the civil law, no action will lie to recover damages for the death of a human being, it seems that in admiralty a libel by a father, to recover for the loss of the services of his minor son, killed in a collision, will be sustained.

2. SAME—COLLISION—LIBEL IN REM.

Where a statute confers upon an administrator the right to recover for a loss of life occasioned by the wrongful act, neglect, or default of another, if such loss of life is occasioned by a collision upon navigable waters, the administrator may proceed by a libel *in rem* against the offending vessel.

In Admiralty.

The original libel in this case claimed damages for the loss of the services of two minor sons of the libellant, killed in a collision between the steamers Garland and Mamie, in the Detroit river, on the twenty-second of July last. The col-

lision was alleged to have been occasioned by the fault and negligence of the Garland.

On the fifteenth of February, 1881, a supplemental libel was filed, setting up the appointment of libellant as the administrator of his son's estate, and claiming to recover in this capacity under an act of the legislature of this state requiring compensation for death by wrongful act, neglect, or default. Exceptions were filed to both libels on the ground that a court of admiralty had no jurisdiction of the subject-matter.

*Alfred Russell*, for libellant.

*Moore & Canfield*, for claimant.

BROWN, D. J. Can the original libel be maintained for the loss of services? Ever since the case of *Baker* v. *Bolton*, 1 Camp. 493, it has been a settled doctrine of the common law that the death of a human being cannot be complained of as an injury in any court of civil jurisdiction. In such case the liability of the defendant ceases with the life of the person injured. This rule has remained undisturbed by a single well-considered opinion, except that of *Sullivan* v. *The Union Pacific Ry. Co.* 3 Dill. 334, for over 70 years, and although it seems to be based upon technical grounds, and does not commend itself to one's sense of natural justice, it is too firmly established to be shaken by judicial opinion. Such was also the ruling of the supreme court of the United States in *The Insurance Co.* v. *Brame*, 95 U. S. 754, wherein it is said "that it is impossible to speak of it as a proposition open to question." The civil law writers appear generally to take the same view, although the court of cassation, in construing the Code Napoleon, seem to have held that such an action would lie. *Hubgh* v. *N. O. & C. R. Co.* 6 La. Ann. 495; *Hermann* v. *Carrolton R. Co.* 11 La. Ann. 5.

Were this an original question, then, I should feel compelled to hold that this libel could not be maintained. But other courts of admiralty in this country have furnished so many precedents for a contrary ruling, I do not feel at liberty to disregard them, although I am at a loss to understand why a rule of liability differing from that of the common law should obtain in these

courts. The earliest case upon the subject is that of *Plummer*
v. *Webb*, 1 Ware, 75, in which Judge Ware upheld a libel by a
father for the death by ill-treatment of his minor son.   On the
question being first presented to Judge Sprague, he held, in
*Crapo* v. *Allen*, 1 Sprague, 184, that "for mere torts the right
of action by the general maritime law, as by the civil law, dies
with the person injured;" citing Aall's Admiralty Practice,
21; Dunlap's Admiralty Practice, 87.   But on reconsidering
the subject in *Cutting* v. *Seabury*, 1 Sprague, 522, he thought
it could not be considered as settled law that no action could
be maintained for the damages occassioned from the death
of a human being; but no decided opinion was pronounced
upon the point, and the libel was dismissed on other grounds.
Notwithstanding the learned judge made no attempt to dis-
tinguish between a court of common law and a court of admi-
ralty, his decision in *Cutting* v. *Seabury* has been cited in a
large number of cases as a precedent for holding that a court
of admiralty would sustain such a suit, though a court of
common law would not.   *The Sea Gull*, Chase's Decisions,
143; *The Highland Light*, Id. 150; *The Towanda*, 23 Int. Rev.
Rec. 384; *The Charles Morgan*, 27 Law Reg. 624.

The whole subject is exhaustively discussed by the learned
judge of the district of Oregon, in the case of *Holmes* v. *The
O. & C. Ry. Co.* 5 FED. REP. 75, and the jurisdiction sustained.
Against this concurrence of co-ordinate courts I do not feel
at liberty to set up my own opinion, particularly in view of
the fact that the common-law rule seems to be consonant
neither with reason nor justice.

I find less difficulty in sustaining libellant's claim under
his supplemental libel.   By chapter 212 of the Compiled Laws
of this state, "whenever the death of a person shall be caused
by wrongful act, neglect, or default, and the act, neglect, or
default is such as would, if death had not ensued, have enti-
tled the party injured to maintain an action and recover
damages in respect thereof, then, and in every such case, the
person who, or the corporation which, would be liable, if
death had not ensued, shall be liable to an action for dam-
ages, notwithstanding the death of the person injured, and

although the death shall have been caused under such circumstances as amount in law to felony." The second section provides that the action shall be brought by the personal representatives of the deceased person for the exclusive benefit of his widow and next of kin. The tort in this case occurred upon navigable waters, and, had the deceased survived, there is no question that he could have maintained the libel, irrespective of any state statute. In the *Steamboat Co.* v. *Chase*, 16 Wall. 532, Mr. Justice Clifford expressed a doubt whether a state statute could be regarded as applicable in such a case to authorize the legal representatives of the deceased to maintain such an action for the benefit of the next of kin, giving as a reason that state laws cannot extend or restrict the jurisdiction of admiralty courts. We had supposed from the reading of other cases that where a state statute gave a right of action, a federal court would administer the remedy where the requisite jurisdictional averments could be made; and, if the action was maritime in its nature, a court of admiralty would be a proper tribunal. Thus, in *Ex parte McNeil*, 13 Wall. 243, a libel was sustained under a state statute allowing pilotage fees to the pilot who first tenders his services. In delivering the opinion, Mr. Justice Swayne observes: "The state law cannot give jurisdiction to any federal court. But that is not the question in this case. A state law may give a substantial right of such a character that, where there is no impediment arising from the residence of the parties, the right may be enforced in the proper federal tribunal, whether it be a court of equity, of admiralty, or of common law. The statute in such cases does not confer the jurisdiction; that exists already, and it is invoked to give effect to the right by applying the appropriate remedy. This principle may be laid down as axiomatic in our national jurisprudence." Other cases in the same court announce a similar doctrine. But this question is also so thoroughly reviewed in the case of *Holmes* v. *The O. & C. Ry. Co.*, to which attention has already been called, that any further consideration of the subject will result in a useless repetition of Judge Deady's reasoning, in which I fully concur.

In England the question whether a suit will lie in the admiralty courts under Lord Campbell's act is still unsettled. Sir Robert Phillimore sustained the jurisdiction, with some hesitation, in the case of *The Guldfaxe*, L. R. 2 Ad. & Ec. 325, and again in *The Explorer*, L. R. 3 Ad. & Ec. 359. These rulings were affirmed by the privy council in *The Beta*, L. R. 2 P. C. 447. The question again arose in the case of *The Franconia*, 3 Asp. Maritime Law Cases, 415, 435, wherein the court of admiralty again asserted its jurisdiction. On appeal to the new appellate court the lord justices were equally divided in opinion. In a similar case (*Smith* v. *Brown* L. R. 6 Q. B. 720) the court of queen's bench issued a writ of prohibition to the admiralty court. See Marsden on Collisions, 64.

The whole controversy turned upon the construction to be given to the word "damage" in the admiralty court act, the court of queen's bench contending that the application of this word should be limited to cases of damage to property, while the privy council considered that it applied equally to injuries to persons. As the jurisdiction of admiralty courts in this country is not fixed or limited by any similar statute, these decisions throw but little light upon the question.

Upon the whole I think the exceptions should be overruled. If I am in error the supreme court will, upon application for a writ of prohibition, afford a summary and speedy relief.

NOTE. See, also, *In re Long Island, etc.*, *ante*, 607.