### THE E. B. WARD, Jr.[1]

### CARLSDOTTER and others *v.* THE E. B. WARD, Jr.[1]

*(Circuit Court, E. D. Louisiana.* June, 1883.)

1. ADMIRALTY JURISPRUDENCE—ACTION FOR LOSS OF LIFE ON HIGH SEAS.
   An action for damages for the loss of a human life, caused by a maritime tort, survives in admiralty.

2. SAME—STATUTE OF STATE.
   Where the statute of a state gives a right of action for loss of human life, and such loss occurs by reason of the tort of a vessel upon the high seas, whose owners reside in that state, and whose home port is in that state, such vessel was a part of the territory of that state, and its courts would entertain an action under the statute against the owners for the wrongful conduct of their agents on the high seas which resulted in loss of human life. A court of admiralty can enforce such right of action in a proceeding *in rem.*

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

Admiralty Appeal. S. C. 16 Fed. Rep. 255, reversed.

This suit was brought by Christina Carlsdotter, widow of Carl P. Peterson; John S. Jonsson and his wife, Charlotta J. Jonsson, father and mother of Gustaf L. Jonsson, and Ulrika B. Hohn, mother of Eva M. Hohn, sister of Erick A. Hohn, for the recovery of damages suffered by them through the death of said Carl P. Peterson, Gustaf L. Jonsson, and Erick A. Hohn, and also for the recovery of the value of certain personal effects belonging to said alleged decedents. The libel avers that said decedents, who were seamen on board of the Swedish bark Henrick, were killed in consequence of a collision between the said bark and the said steam-ship E. B. Ward, Jr., which collision occurred upon the high seas. The libelants alege that they are the legal heirs of said decedents, and claim (1) $3,000 for the damages suffered by each of said decedents,—a right of action for which damages, it is claimed, survives in favor of the said libelants under the Civil Code of Louisiana; (2) $3,000 for damages suffered by said libelants by reason of the deprivation of the services, society, and support of said decedents; (3) $184 damages for the loss of personal effects of each of said decedents. The claimants excepted to the said libel upon the ground, among others, that the right of action for the recovery of said items of damages perished with the said decedents, and did not survive in admiralty in favor of said libelants, the alleged heirs of said decedents.

*John D. Rouse* and *Wm. Grant,* for libelants.

*W. S. Benedict* and *Andrew J. Murphy,* for claimants.

Pardee, J. The question made in this case is whether an action for damages for the loss of a human life caused by a maritime tort survives in admiralty. Whenever this question has been before the supreme court it has not been necessary to decide it, and, while commenting on it as an open question, the court has clearly left it for decision hereafter when the proper case should be made. See *Steamboat Co.* v. *Chase,* 16 Wall. 532; *Ex parte Gordon,* 104 U. S. 515. The chief justice, in deciding the latter case, states the real position of the question as follows:

"The court of admiralty has jurisdiction of the vessel and the subject-matter of the action, to-wit, the collision. It is competent to try the facts, and, as we think, to determine whether, since the common-law courts in England and to a large extent in the United States are permitted to estimate the damages which a particular person has sustained by the wrongful killing of another, the courts of admiralty may not do the same thing."

In the several circuit and district courts in this country, sitting in admiralty, many opinions have been rendered going over the entire ground, and apparently exhausting the subject, so far as discussion is concerned. These decisions are to the following effect: (1) That the action does survive; (2) that it does not survive; (3) that when the tort resulting in death was committed on navigable waters within the body of a country where the prevailing state law gave a right of

action, the admiralty court would allow the action and enforce the remedy by a proceeding *in rem*.

*First.* That the cause of action does survive in admiralty has been hinted and doubted for 50 years. See *Plummer* v. *Webb*, 1 Ware, 75. But the first perpendicular decision was rendered by Chief Justice CHASE on the circuit in the case of *The Sea Gull*, Chase, Dec. 145. The collision in that case may have been within the body of a country, but the report does not show it, nor does that fact cut any figure in the case. In that case the chief justice held that "the rule that personal actions die with the person is peculiar to the common law, traceable to the feudal system and its forfeitures, and does not obtain in admiralty;" and that "a husband can recover by a proceeding *in rem* against the vessel which caused the death of his wife for the injury suffered by him thereby." This decision has been cited and followed in the following cases, which I have examined: *The Highland Light*, Chase, Dec. 150; *The Towanda*, 23 Int. Rev. Rec. 384; *The Garland*, 5 FED. REP. 924; *The Harrisburg*, 15 FED. REP. 610; *The Charles Morgan*, 18 Law Reg. 624. See, also, *Holmes* v. *O. & C. Ry. Co.* 5 FED. REP. 75; *In re Long Island Transp. Co.* Id. 599.

*Second.* That the action does not survive has been held expressly in *The Sylvan Glen*, 9 FED. REP. 335, and this present case, (16 FED REP. 255,) which are the only late cases to this effect I have found.

*Third.* It seems to have been held uniformly that where the tort was committed within the territory of a state which by its laws gave a right of action for the wrongful killing of a person, the admiralty courts would take jurisdiction, and by proceedings *in rem* enforce a lien on the offending vessel. This has been the practice in the courts of this district and circuit. The only case that I have found that takes the contrary view is *The Sylvan Glen, supra.* Without doubting the correctness of this practice, it does seem that unless the action survives in admiralty, the courts have resurrected a lien in order to furnish a complete remedy. No state statute that I have found gives any lien for the wrongful killing of a person, and it would seem clear that if the admiralty right of action dies with the person injured, the maritime lien dies with it; and how can the court resurrect the one and not the other?

2. The general tone of the many judges who have passed upon this question shows that in the opinion of enlightened jurists the admiralty courts of the country should allow the action and enforce the remedy. "Natural equity and the general principles of law are in favor of it." Judge SPRAGUE, in *Cutting* v. *Seaburg*, 1 Spr. 522. "It better becomes the humane and liberal character of proceedings in admiralty to give than withhold the remedy." Chief Justice CHASE, *The Sea Gull.* "The common-law rule seems to be consonant with neither reason nor justice." Judge BROWN, *The Garland, supra.* To the same purport see Judge MCKENNON's remarks in *The To-*

*wanda, supra;* Judge DILLON's opinion in *Sullivan* v. *U. P. R. Co.* 3 Dill. 337. And in *The City of Houston,* not reported, decided in this court in 1877, by Mr. Justice WOODS, then circuit judge, that eminent jurist, in his oral opinion, is said to have held "that to hold that a court of admiralty cannot redress such a wrong would be a blot on our civilization and a reproach to the admiralty law."

Upon the whole case, considering the natural equity and reason of the matter, and the weight of authority as determined by late adjudicated cases in the admiralty courts of the United States, I am inclined to hold that the ancient common-law rule, *"actiones personales moritur cum persona,"* if it ever prevailed in the admiralty law of this country, has been so modified by the statutory enactments of the various states and the progress of the age, that now the admiralty courts "are permitted to estimate the damages which a particular person has sustained by the wrongful killing of another," and enforce an adequate remedy.

At all events, as the question is an open one, it is best to resolve the doubts in favor of what all the judges concede to be "natural equity and justice."

3. The learned proctor for libelants suggests in his brief another view of this case, which, if correct, would maintain his libel as within the conceded practice and jurisdiction of the court.

The record shows that the offending steamer, the E. B. Ward, Jr., was wholly owned by citizens of Louisiana, and the port of New Orleans was her home port. Article 2315, Rev. Civil Code La., reads:

"Every act whatever of man that causes damage to another, obliges him, by whose fault it happened, to repair it. The right of this action shall survive, in case of death, in favor of the minor children and widow of deceased, or either of them, and in default of these in favor of the surviving father and mother, or either of them, for the space of one year from the death."

From which it would seem that these libelants might maintain their action in the state courts of Louisiana without question; and I believe this is conceded as true if the collision had occurred in the navigable waters within the state; and, in this latter case, I believe it is also conceded that the admiralty court could give a remedy against the ship.

"A vessel at sea is considered a part of the territory to which it belongs when at home. It carries with it the local legal rights and legal jurisdiction of such locality. All on board are endowed, and subject accordingly. * * * The jurisdiction of the local sovereign over a vessel, and over those belonging to her in the home port and aboard on the sea, is, according to the law of nations, the same." *Wilson* v. *McNamee,* 102 U. S. 572, and text-books there cited. See, also, *Crapo* v. *Kelly,* 16 Wall. 610.

Why, then, if the E. B. Ward, Jr., when on the Gulf of Mexico, was a part of the territory of Louisiana, so far as legal rights and legal jurisdiction was concerned, should not the state courts of Louisiana entertain an action at law for damages against the owners

for the wrongful conduct of their agents in bringing on the collision which resulted in the death of libelant's husband, father, and son? And, if the state laws give such action, why should not this court hold (following the conceded practice) "that the cause of action, therefore, existed by force of the territorial statute, and since it constituted a tort, and was upon navigable waters, and occurred in a case of collision, the court of admiralty could enforce it in a proceeding *in rem.*" · The exceptions filed in this case are overruled, with costs.