## STEAMBOAT COMPANY *v.* CHASE.

A statute of a State giving to the next of kin of a person crossing upon one of its public highways with reasonable care, and killed by a common carrier by means of steamboats, an action on the case for damages for the injury caused by the death of such person, does not interfere with the admiralty jurisdiction of the District Courts of the United States, as conferred by the Constitution and the Judiciary Act of September 24th, 1789; and this is so, even though no such remedy enforceable through the admiralty existed when the said act was passed, or has existed since.

ERROR to the Supreme Court of Rhode Island.

A statute of the State just named,* passed in October, 1853, and relating to common carriers by means of steamboats, enacts:

"SECTION 16. If the life of any person crossing upon a public highway with reasonable care, shall be lost by reason of the negligence or carelessness of such common carriers, or by the unfitness or negligence or carelessness of their servants or agents, in this State, such common carriers shall be liable to damages for the injury caused by the loss of life of such person, to be recovered by action on the case, for the benefit of the husband or widow and next of-kin of the deceased person.

"SECTION 21. In all cases in which the death of any persons ensues from injury inflicted by the wrongful act of another, and in which an action for damages might have been maintained at the common law had death not ensued, the person inflicting such injury shall be liable to an action for damages for the injury caused by the death of such person, to be recovered by

---

* Revised Statutes, chapter 176. Of Actions.

action on the case for the use of his or her husband, widow, children, or next of kin," &c.

These statutory provisions being in force in Rhode Island, but no such right enforceable through the admiralty having been given by Congress, a steamer owned by the American Steamboat Company, common carriers upon Narraganset Bay (a public highway, and tidal waters running between Providence and Newport, both within Rhode Island), negligently ran over one George Cook crossing upon that bay with reasonable care, in a sailboat, and killed him. Thereupon Chase, administrator of Cook, brought suit against the steamboat company in one of the State courts of Rhode Island. The company set up that the court had not jurisdiction of the cause of action on the ground that under the Constitution of the United States—which ordains that

" The judicial power of the United States shall extend to ALL cases of admiralty and maritime jurisdiction "—

And under the ninth section of the Judiciary Act approved September 24th, 1789, which section says that

" *The District Courts shall have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy when the common law is adequate to give it* "—

exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction was vested in the District Courts; that the courts of common law had only such jurisdiction of marine torts as was conferred by the saving clause in the ninth section of the act, and that actions for damages for loss of life did not come within the clause.

The court, however, sustained the jurisdiction; and verdict and judgment having been given for the plaintiff in $12,000, and the Supreme Court of the State having affirmed that judgment, the cause was removed to this court.

*Messrs. J. A. Gardner and B. F. Thurston, for the plaintiff in error:*

The question is, can a court of common law exercise ju-

risdiction, and give a remedy to a suitor for a consequential injury growing out of a marine tort, when no remedy for such injury exists in the admiralty?

Or, assuming that under the general jurisdiction of courts of admiralty cognizance of such action could be entertained by a district court of the United States, can a suitor have a remedy in a court of common law, when the right to such action is created by a State statute, passed subsequent to September 24th, 1789?

The obvious purpose of the Constitution and of the ninth section of the Judiciary Act, was to create a maritime court for the purpose of administering the universal law of the seas upon the basis of the civil system, known to maritime states, in distinction from a court familiar only with the limited jurisprudence of the common law system. Indeed, there is an obvious propriety in excluding the courts of common law from adjudicating upon subjects which are, from their nature, of admiralty cognizance, except to the extent recognized and permitted by the acts of Congress. A jury of landsmen unfamiliar with the rules and necessities of navigation, is imperfectly qualified to administer justice in a case, the turning-point in which, on the question of liability, can be settled only after a skilled and intelligent weighing of acts done by the respective parties in the exercise of a science requiring special knowledge and aptitude to understand.

As the grant of admiralty jurisdiction to the district courts embraces all subjects which from their nature belong to the admiralty, and is exclusive in its general character,[*] it follows that the Federal and the State courts of common law have no other jurisdiction over the same subjects than that which is conferred by the saving clause of the ninth section of the act of 1789, which is in the words, " *saving to suitors in all cases the right of a common-law remedy, where the common law is competent to give it.*"[†]

Now a statutory action for damages for loss of life re-

---

[*] The Genesee Chief, 12 Howard, 457 ; The Hine, 4 Wallace, 556.

[†] The Moses Taylor, 4 Wallace, 412.

sulting from a collision on navigable waters was unknown to both the common law and the admiralty in 1789.* It has not been since, by legislation of Congress, given to the admiralty. It, therefore, cannot have been *saved* to the common-law courts, either directly or by implication. Neither was such remedy saved if known to the admiralty and unknown to the common law. Not only are the remedies which are saved confined to common-law remedies,† but only such concurrent remedies are saved as the common law was then competent to give. In *The Hine* v. *Trevor*,‡ this court remarked:

"It could not have been the intention of Congress by the exception in that section, to give the suitor all such remedies as might afterwards be enacted by State statutes, for this would have enabled the States to make the jurisdiction of their courts concurrent in all cases, by simply providing a statutory remedy for all cases. Thus the exclusive jurisdiction of the Federal courts would be defeated. In the act of 1845, where Congress does this, the language expresses it clearly. There is added 'any concurrent remedy which may be given by the State laws, where such steamer or other vessel is employed.'"

It is not to be presumed that it was the intention of Congress, at the moment that it was given to the Federal courts the exclusive cognizance of civil causes of admiralty jurisdiction, to save to the common-law courts any greater *right* than it conferred upon the admiralty courts. It is an existing common-law remedy which is saved to suitors *for rights recognized by the admiralty.*

It is important to observe that the privilege is a personal one to *suitors*. It is not a jurisdiction conferred on courts, or a power vested in State legislatures to create new rights of action, affecting subjects coming within the law of the sea.§

---

* Such action was not allowed in England until 9 Victoria (1846), when it was given by the statute known as Lord Campbell's act. There was no legislation on this subject by any of the United States earlier than the English statute, and most of the American statutes are, in substance, copies of the English statute.

† The Moses Taylor, 4 Wallace, 481.                    ‡ Ib. 572.
§ The Belfast, 7 Wallace, 624.

Nowhere have the courts intimated that claims founded on marine torts, where the right of the party to proceed *in rem*, or *in personam*, in the admiralty to enforce such claims is not recognized, he can pursue such claims under a right given by State laws, in the common-law courts.

A suit to recover damages for loss of life resulting from a collision of two vessels on the seas is in its nature proper for admiralty cognizance. The suit is founded on the collision itself, a subject exclusively cognizable in the admiralty; and by the act of 1789, the derivative suit, if cognizable anywhere, should be exclusively cognizable in the admiralty. If, from an omission by Congress to create by a new statute a right to maintain it there, such a suit cannot be so proceeded in, then there still exists the same but no greater hardship on suitors than yet exists in several States, which have never, up to this day, in derogation of the common law, enacted statutes giving an action for damages where death results from a tort.

We insist, therefore, that the courts of common law have only the right to exercise a *concurrent* jurisdiction over such subjects of admiralty cognizance as they under the Constitution and the acts of Congress are permitted to deal with at all.* With respect to subjects of recognized admiralty cognizance at the time of the passage of the act of 1789, the State legislatures could provide common-law remedies, and may by subsequent legislation enlarge or modify these remedies: preserving always the distinctive characteristics of common law procedure. But the case is different with respect to subjects not of recognized admiralty cognizance. And as yet no civil remedy to next of kin for damages consequent on an injury resulting in the loss of life of their relative is as yet known to the admiralty, Congress not yet having given any.

*Mr. W. P. Sheffield, contra:*

The words "extend to" in the provision of the Federal

---

* New Jersey Steam Navigation Co. *v.* Merchants' Bank, 6 Howard, 390; The Hine *v.* Trevor, 4 Wallace, 568.

Constitution, that the judicial power shall *extend to* all cases of admiralty and maritime jurisdiction, do not imply that the nation shall exhaust this jurisdiction.

In addition, the saving clause of the 9th section of the Judiciary Act "*saves to suitors in all cases the right of a common-law remedy, when the common law is competent to give it.*" Yet "the clause was inserted," says this court,* "probably from abundant caution, lest the exclusive terms in which the power is confirmed in the District Court might be deemed to have taken away the concurrent remedy which had before existed." The same right would have existed had no such clause been inserted. Indeed, the State must have the same right to exercise the reserved powers over her waters, to the extent that they are reserved, as she has to exercise the reserved powers of government over the land, and to have the same power to provide a remedy for injuries committed on tide-waters, within her limits, that she has to punish the like injuries committed on land by railroad companies who carry the mails over post routes; and have the same right to exercise a police authority generally to protect her citizens upon the water, as she has to exercise this authority to protect them upon land. The fact that the Federal government has the power to carry out the objects of the Federal government over water or land, does not abrogate the power of a State to protect her citizens. If indeed a State should legislate so as to obstruct the Federal authorities in attaining the ends for which the Federal government was created, such legislation would be void. So if this injury had been inflicted upon the high seas, or beyond the State jurisdiction, the State statute would not have applied to it. The jurisdiction of the States to enact laws punishing offences committed within the counties of States, upon waters, has been affirmed in numerous cases in this court.†

The Federalist (No. 45) says, "The powers reserved to the several States will extend to all objects which in the ordi-

---

* New Jersey Steam Navigation Co. *v.* Merchants' Bank, 6 Howard, 390.

† United States *v.* Bevans, 3 Wheaton, 386; Smith *v.* Maryland, 18 Howard, 71; Gibbons *v.* Ogden, 9 Wheaton, 195.

nary course of affairs concern the lives, liberties, and properties of the people, and the internal order, improvement, and prosperity of the State." The object of Rhode Island in passing this statute plainly was but to protect the lives of her citizens. It relates exclusively to persons, and does not apply to things which are generally the subject of admiralty jurisdiction. As it applies to the case at bar, it in no way interferes with any *exercised* power of the Federal government, to regulate commerce between the States or with foreign nations. It provides that the right of action which Cook would have had against the steamboat company, had they not killed him, should survive to his administrator, and provides nothing more. The effect of it is simply to take from careless persons that immunity from punishment which the common law tolerates, if carelessness destroys its victims. If Cook had been injured, no matter how much, so long as he had not been killed, no question would have been made here, that an action at common law could have been maintained by him under a State statute, for then the remedy at common law and the common-law remedy would have coincided. The statute providing that the right of action with the common-law remedy shall survive, cannot change the jurisdiction.

*Reply:* The grant of jurisdiction by the Constitution to the Federal courts of "*all* cases of admiralty and maritime jurisdiction," and the broad declaration by the act of 1789, that such jurisdiction is "exclusive" of all State and Federal courts of common law, is poorly satisfied by the declaration that all that is thus exclusively vested is a right to proceed *in rem,* and that the common-law courts are only prohibited from making an inanimate object a defendant. If a form of procedure respecting a subject, and not the subject itself, is all that distinguishes the exclusive jurisdiction of courts of admiralty from courts of common law, then much learning and zeal in argument have been wasted before this court and by the bench, in the effort to define and settle the limits of these two ancient conflicting jurisdictions.

Mr. Justice CLIFFORD delivered the opinion of the court.

Remedies for marine torts, it is conceded, may be prosecuted in the admiralty courts, even though the wrongful act was committed on navigable waters within the body of a county, as the exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction is conferred upon the District Courts by the ninth section of the Judiciary Act. Repeated attempts were made in our early judicial history to induce the court to hold otherwise, but the court refused to adopt any other theory, and held that the entire admiralty power of the Constitution was lodged in the Federal courts; that Congress intended by the ninth section of the Judiciary Act to invest the District Courts with that entire power, as courts of original jurisdiction, employing the phrase "exclusive original cognizance" to express that purpose, and that it was intended that the power should be exclusive of the State courts as well as the other Federal courts.

Common carriers of passengers, whether by railroad or steamboat, in case the life of a passenger in their care is lost, or the life of any person crossing upon a public highway is lost in that State, by reason of the negligence or carelessness of such common carrier, or by the unfitness, negligence, or carelessness of their servants or agents, are made liable by the statute law of the State to damages for the injury caused by the loss of the life of such person, to be recovered by action on the case for the benefit of the husband or widow and next of kin of the deceased person.*

Provision is also made by another section of the same statute that in all cases in which the death of any person ensues from injury inflicted by the wrongful act of another, and in which an action for damages might have been maintained at the common law had death not ensued, the person inflicting such injury shall be liable to an action for damages for the injury caused by the death of such person, to be recovered by an action on the case for the use of his or her husband, widow, children, or next of kin.

---

* Revised Statutes, 427.

Undisputed as the facts are in this case it is not necessary to refer to them with much particularity. By the pleadings it appears that the defendants are common carriers of passengers over the waters of the Narraganset Bay, one of the public highways within the State, between the ports of Newport and Providence in the same State, and that the plaintiff is the administrator of the estate of George Cook, late of Portsmouth in that State, deceased. He was passing over the waters of the bay in a sailboat and lost his life on the 29th of June, 1869, by means of a collision between the steamboat of the defendants and the sailboat in which he was passing, and which was caused, as the plaintiff alleges, while the decedent was in the exercise of due care and wholly through the unfitness, negligence, and carelessness of the master of the steamboat. Damages are claimed by the plaintiff for the benefit of the widow and children of the deceased. Judgment was rendered for the plaintiff in the Supreme Court of the State in the sum of $12,000; and the defendants sued out a writ of error and removed the cause into this court.

Two errors are assigned: (1.) That the common-law courts cannot exercise jurisdiction and give a remedy for a consequential injury, growing out of a marine tort, where no remedy for such an injury exists in the admiralty courts. (2.) That a suitor cannot have a remedy in such a case in a common-law court, even if the admiralty courts have jurisdiction, as the right of action was created by a State statute enacted subsequent to the passage of the Judiciary Act.

Where no remedy exists for an injury in the admiralty courts the fact that such courts exist and exercise jurisdiction in other causes of action leaves the State courts as free to exercise jurisdiction in respect to an injury not cognizable in the admiralty as if the admiralty courts were unknown to the Constitution and had no existence in our jurisprudence. Jurisdiction to enforce maritime liens by proceedings *in rem* is exclusive in the admiralty courts. State courts, therefore, are incompetent to afford a remedy in such a case, as they do not possess the power to issue the appropriate

process to enforce the lien and give effect to the proceeding. Vested exclusively as such power is in the admiralty courts, it is settled law that the State legislatures cannot authorize State courts to exercise jurisdiction in such a case by a proceeding *in rem.*\*

Exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction was conferred upon the District Courts by the ninth section of the Judiciary Act, including all seizures under the laws of impost, navigation, or trade of the United States, where the seizures are made on waters which are navigable from the sea by vessels of ten or more tons burden, within their respective districts as well as upon the high seas.†

Admiralty jurisdiction was conferred upon the United States by the Constitution, and inasmuch as the power conferred extends to all cases of admiralty and maritime jurisdiction, it is clear and undeniable that a remedy for a marine tort may be sought in the admiralty courts, and if the injured party had survived no doubt is entertained that he might have sought redress for his injuries in the proper admiralty court, wholly irrespective of the State statute enacting the remedy there given and prescribing the form of action and the measure of damages, as the wrongful act was committed on navigable waters within the admiralty and maritime jurisdiction conferred upon such courts by the Constitution and the laws of Congress.‡

Doubts, however, may arise whether the action survives in the admiralty, and if not, whether a State statute can be regarded as applicable in such a case to authorize the legal representatives of the deceased to maintain such an action for the benefit of the widow and children of the deceased. Undoubtedly the general rule is that State laws cannot extend or restrict the jurisdiction of the admiralty courts, but

---

\* The Moses Taylor, 4 Wallace, 411; The Hine, 4 Id. 555; The Belfast, 7 Id. 642.

† United States *v.* Bevans, 3 Wheaton, 387.

‡ The Commerce, 1 Black, 578; The Belfast, 7 Wallace, 640; 2 Story on the Constitution, § 1669; The Genesee Chief, 12 Howard, 452.

it is suggested that the action may be maintained in this case, without any departure from that principle, as the only practical effect allowed to the State statute is to take the case out of the operation of the common-law maxim that personal actions die with the person. Most of the common-law cases deny that the action is maintainable in the name of the legal representatives, and several text writers have expressed the same opinion.* Judge Sprague also applied the same rule in the case of *Crapo* v. *Allen,*† but in a later case‡ he left the question open, with the remark that it cannot be regarded as settled law that an action cannot be maintained in such a case.

Statutes have been passed in many of the States giving a remedy in such cases, and in the case of *Hiner* v. *The Sea Gull,*§ the Chief Justice held in a case where the suit was brought by the husband to recover damages to himself for the death of his wife, occasioned by the fault of the defendant, that the suit was maintainable.‖

Difficulties, it must be conceded, will attend the solution of the question, but it is not necessary to decide it in the present case, as the jurisdiction of the State court may be supported, whether such a suit may or may not be maintained in the admiralty courts.

Sufficient has already been remarked to show that the State courts have jurisdiction if the admiralty courts have no jurisdiction, and a few observations will serve to show that the jurisdiction of the State courts is equally undeniable if it is determined that the case is within the jurisdiction of the admiralty courts. Much discussion of that topic cannot be necessary, as several decisions of this court have established that rule as applicable in all cases where the action in the State court is in form a common-law action against the

---

* Carey *v.* Railroad Co., 1 Cushing, 475; Baker *v.* Bolton et al., 1 Campbell, 493; Dunlap's Practice, 87; Hall's Admiralty Practice, 22; 2 Parsons on Shipping, 351; Benedict's Admiralty, 2d ed., § 309.

† 1 Sprague, 184.          ‡ Cutting *v.* Seabury, 1 Sprague, 522.

§ 2 Law Times, 15.

‖ Ford *v.* Monroe, 20 Wendell, 210; James *v.* Christy, 18 Missouri, 162.

person, without any of the ingredients of a proceeding *in rem* to enforce a maritime lien. Where the suit is *in rem* against the thing, the original jurisdiction is exclusive in the District Courts, as provided in the ninth section of the Judiciary Act; but when the suit is *in personam* against the owner, the party seeking redress may proceed by libel in the District Court, or he may, at his election, proceed in an action at law, either in the Circuit Court if he and the defendant are citizens of different States, or in a State court as in other cases of actions cognizable in the State and Federal courts exercising jurisdiction in common-law cases, as provided in the eleventh section of the Judiciary Act.* He may have an action at law, in the case supposed, either in the Circuit Court or in a State court, because the common law in such a case is competent to give him a remedy, and wherever the common law in such a case is competent to give a party a remedy, the right to such a remedy is reserved and secured to suitors by the saving clause contained in the ninth section of the Judiciary Act.†

Suitors may have a common-law remedy in all cases where the common law is competent to give it, but the defendants insist that a suitor cannot have redress in a common-law court in such a case, even if the admiralty courts have jurisdiction, as the right of action was created by a State statute enacted subsequent to the passage of the Judiciary Act.

Attempt is made to deny the right to such a remedy in this case, upon the ground that the operation of the saving clause must be limited to such causes of action as were known to the common law at the time of the passage of the Judiciary Act, and the argument is that the cause of action alleged was not known to the common law at that period, which cannot be admitted, as actions to recover damages for personal injuries prosecuted in the name of the injured party were well known, even in the early history of the common law. Such actions, it must be admitted, did not ordinarily

---

* Leon *v.* Galceran, 11 Wallace, 188.

† 1 Stat. at Large, 76; The Belfast, 7 Wallace, 644; The Moses Taylor, 4 Id. 411; The Hine, 4 Id. 555.

survive, but nearly all the States have passed laws to prevent such a failure of justice, and the validity of such laws has never been much questioned.*

Questions of the kind cannot arise in suits *in rem* to enforce maritime liens, as the common law is not competent to give such a remedy, and the jurisdiction of the admiralty courts in such cases is exclusive. Such a question can only arise in personal suits where the remedy, in the two jurisdictions, is without any substantial difference. Examined carefully it is evident that Congress intended by that provision to allow the party to seek redress in the admiralty if he saw fit to do so, but not to make it compulsory in any case where the common law is competent to give him a remedy. Properly construed a party under that provision may proceed *in rem* in the admiralty, if a maritime lien arises, or he may bring a suit *in personam* in the same jurisdiction, or he may elect not to go into admiralty at all, and may resort to his common-law remedy in the State courts, or in the Circuit Courts of the United States if he can make proper parties to give the Circuit Court jurisdiction of his case.†

Different systems of pleading and modes of proceeding, and different rules of evidence prevail in the two jurisdictions, but whether the party elects to go into one or the other, he must conform to the system of pleading and to the rules of practice, and of evidence, which prevail in the chosen forum. State statutes, if applicable to the case, constitute the rules of decision in common-law actions, in the Circuit Courts as well as in the State courts, but the rules of pleading, practice, and of evidence in the admiralty courts are regulated by the admiralty law as ultimately expounded by the decisions of this court. State legislatures may regulate the practice, proceedings, and rules of evidence in their own courts, and those rules, under the 34th section of the Judiciary Act, become, in suits at common law, the rules of decision, where they apply, in the Circuit Courts.

---

* Railroad *v.* Barron, 5 Wallace, 90.
† Leon *v.* Galceran, 11 Id. 188.

All these are familiar principles, and they are sufficient to dispose of the case and to show that there is no error in the record.

JUDGMENT AFFIRMED.