## KEITHLEY v. NORTH PAC. S. S. CO.

### (District Court, D. Oregon. April 3, 1916.)

### No. 7026.

ADMIRALTY ⟨⟩2—JURISDICTION—SAVING OF COMMON-LAW REMEDY.

Under Judicial Code (Act March 3, 1911, c. 231) § 24(3), 36 Stat. 1091 (Comp. St. 1913, § 991), which gives the federal District Courts original jurisdiction of all civil causes of admiralty and maritime jurisdiction, "saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it," a right of action in personam for a tort, given by a state statute, may be enforced by an action at law in a state court, or in a federal court where there is a diversity of citizenship, although the tort was committed on shipboard within the navigable waters of the state, and a remedy might also be had in a court of admiralty.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 18–28; Dec. Dig. ⟨⟩2.]

At Law. Action by C. Keithley against the North Pacific Steamship Company. On demurrer to answer. Sustained.

Littlefield & Maguire, of Portland, Or., for plaintiff.
Sanderson Reed, of Portland, Or., for defendant.

WOLVERTON, District Judge. This is an action at common law to recover damages for injuries to a longshoreman, sustained, it is alleged, through the carelessness and negligence of the ship, its officers, and agents. The injuries were sustained on board the George W. Elder while engaged in taking cargo aboard; the vessel being moored in the Willamette river, at a wharf in Portland, Or., at the time. The action is brought specifically under the local Employers' Liability Act. The defendant has interposed an answer setting up the defenses of an act of fellow servants, assumption of risk, and contributory negligence. These defenses are met by a demurrer, and the question is presented whether the action will lie, in view of the exclusive jurisdiction accorded courts of admiralty in maritime matters.

By the third clause of section 24 of the Judicial Code the District Courts are accorded original jurisdiction of all civil causes of admiralty and maritime jurisdiction, "saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it." That this latter quoted clause is a saving clause, no one can dispute. It is a saving from the admiralty and maritime jurisdiction, the

exclusive cognizance of which is accorded to the District Courts. It is a saving to suitors in all cases where they have a common-law remedy, and the common law is competent to give it; that is, the common-law remedy. "It is not a remedy in the common-law courts which is saved," says Mr. Justice Field in The Moses Taylor, 4 Wall. 411, 431 (18 L. Ed. 397), "but a common-law remedy." And in further illustration the distinguished jurist continues:

"A proceeding in rem, as used in the admiralty courts, is not a remedy afforded by the common law; it is a proceeding under the civil law. When used in the common-law courts, it is given by statute."

The suit arising in the Moses Taylor was in rem against the vessel, for breach of contract for the carriage of a passenger, to enforce a local statute purporting to give a lien in such cases against the vessel.

In further elaboration of the principle is the case of The Hine v. Trevor, 4 Wall. 555, 18 L. Ed. 451. The case arose under a statute of the state of Iowa, which gave a process in rem for a collision between two vessels, which was held to be unconstitutional. "But the remedy," says Mr. Justice Miller, "pursued in the Iowa courts in the case before us, is in no sense a common-law remedy. It is a remedy partaking of all the essential features of an admiralty proceeding in rem." Thus was distinguished between a remedy which was maritime and a common-law remedy. It is the latter, and the right given the suitor to enforce it where the common law is competent to give it, which is saved from remedies maritime. The cases are fully reviewed and the doctrine reaffirmed, in The Glide, 167 U. S. 606, 17 Sup. Ct. 930, 42 L. Ed. 296. In that case the court of admiralty enforced a local statute of Massachusetts giving a lien upon the vessel, but it was held that the court of admiralty had exclusive jurisdiction, the proceeding being in rem. The court, in giving the reasons for its conclusions in that case, says:

"The admiralty and maritime jurisdiction is conferred on the courts of the United States by the Constitution, and cannot be enlarged or restricted by the legislation of a state. No state legislation, therefore, can bring within the admiralty jurisdiction of the national courts a subject not maritime in its nature."

There is no persuasive reason why the converse is not also true, namely, that no state legislation can take from the admiralty jurisdiction of the national courts a subject maritime in its nature. Workman v. New York City, Mayor, etc., 179 U. S. 552, 21 Sup. Ct. 212, 45 L. Ed. 314; Steamboat Company v. Chase, 16 Wall. 522, 530, 21 L. Ed. 369.

But this does not argue that a common-law remedy may not impinge at one angle or another upon admiralty and maritime jurisdiction. Indeed, the final conclusion has been reached that the courts of the United States as courts of admiralty have not exclusive jurisdiction of suits in personam growing out of collisions between vessels while navigating navigable waters. It was said in Schoonmaker v. Gilmore, 102 U. S. 118, 26 L. Ed. 95:

"That there always has been a remedy at common law for damages by collision at sea cannot be denied."

Common-law courts may, where the action is in personam, enforce the auxiliary remedy of attachment and seizure, or sequestration, and this even where the auxiliary remedy is given by local statute. In Louisiana the local statute gave to mariners the right in an action for the recovery of wages to a writ of sequestration, whereby property might be seized to be held for the mariner's security abiding the outcome of the action. Three mariners instituted an action in personam in the state court for wages earned as seamen, and had a writ of sequestration levied upon the ship Gallego, upon which they served. The question came up on a writ of error to the Supreme Court of the United States (Garcia y Leon v. Galceran, 11 Wall. 185, 20 L. Ed. 74), whether the writ of sequestration could be sustained, the cause not being in admiralty. The writ was sustained; the court saying that suitors "have the right of a common-law remedy in all cases 'where the common law is competent to give it,' and the common law is as competent as the admiralty to give a remedy in all cases where the suit is in personam against the owner of the property."

The same doctrine is reasserted in the case of Johnson v. Chicago & Pacific Elevator Company, 119 U. S. 388, 7 Sup. Ct. 254, 30 L. Ed. 447, wherein it was held to be not inconsistent with the views expressed in The Moses Taylor and The Hine v. Trevor, supra. See, also, Knapp, Stout & Co. v. McCaffrey, 177 U. S. 638, 648, 20 Sup. Ct. 824, 829 (44 L. Ed. 921), where it is said:

"If * * * the cause of action be not one of which a court of admiralty has jurisdiction, or if the suit be in personam against an individual defendant, with an auxiliary attachment against a particular thing, or against the property of the defendant in general, it is essentially a proceeding according to the course of the common law, and within the saving clause of the statute (section 563) of a common-law remedy."

The latest case sustaining an attachment levied in pursuance of a local statute is Rounds v. Cloverport Foundry, 237 U. S. 303, 35 Sup. Ct. 596, 59 L. Ed. 966. The action was for recovery for work and materials furnished under contract to repair and rebuild a steamboat, accompanied with an attachment of the boat in pursuance of a Kentucky statute providing for a lien upon watercraft for work and supplies. The court determined that the case was one in personam, and the attachment was in that suit, which had no other effect than to provide security for the payment of a personal judgment, that the procedure was within the scope of the common-law remedy for seizure of property to satisfy a judgment, and that it constituted no encroachment upon the exclusive jurisdiction vested in the federal court in admiralty.

Another feature of the inquiry is that state Legislatures have been pronounced competent to enact survival statutes, which become legally effective in common-law remedies. Such a statute was upheld and given operative effect in Steamboat Company v. Chase, supra. Further than this, even causes of action which have been created by state legislation have been given effect by the federal courts as a common-law remedy. Thus in the case last cited the cause of action was created by a Rhode Island statute giving a right of action for the loss of

232 F.—17

the life of a person crossing upon a public highway, occasioned through the negligence or carelessness of a common carrier. One Cook, while in a sailboat crossing Narragansett Bay, being water wholly within the state, was run down and killed by a steamer owned by the American Steamboat Company. Action was instituted in the state court by Cook's administrator to recover under the statute. The administrator being successful in that court, the cause was removed to the Supreme Court of the United States, where it was affirmed. The errors assigned were as follows:

"(1) That the common-law courts cannot exercise jurisdiction and give a remedy for a consequential injury, growing out of a marine tort, where no remedy for such an injury exists in the admiralty courts. (2) That a suitor cannot have a remedy in such a case in a common-law court, even if the admiralty courts have jurisdiction, as the right of action was created by a state statute enacted subsequent to the passage of the Judiciary Act."

Answering these questions, the Supreme Court said, in part:

"Sufficient has already been remarked to show that the state courts have jurisdiction if the admiralty courts have no jurisdiction, and a few observations will serve to show that the jurisdiction of the state courts is equally undeniable if it is determined that the case is within the jurisdiction of the admiralty courts. Much discussion of that topic cannot be necessary, as several decisions of this court have established that rule as applicable in all cases where the action in the state court is in form a common-law action against the person, without any of the ingredients of a proceeding in rem to enforce a maritime lien. * * *

"Examined carefully, it is evident that Congress intended by that provision [the one relating to the saving to all suitors the right of a common-law remedy] to allow the party to seek redress in the admiralty if he saw fit to do so, but not to make it compulsory in any case where the common law is competent to give him a remedy. Properly construed, a party under that provision may proceed in rem in the admiralty, if a maritime lien arises, or he may bring a suit in personam in the same jurisdiction, or he may elect not to go into admiralty at all, and may resort to his common-law remedy in the state courts, or in the Circuit Courts of the United States if he can make proper parties to give the Circuit Court jurisdiction of his case."

The principle was reaffirmed in The Hamilton, 207 U. S. 398, 28 Sup. Ct. 133, 52 L. Ed. 264. The injury considered was one arising from a collision upon the high seas, between two vessels belonging to two corporations of the same state, namely, Delaware. The statute gave a survival action, concerning which the court, speaking through Mr. Justice Holmes, had this to say:

"And as the state courts in their decisions would follow their own notions about the law, and might change them from time to time, it would be strange if the state might not make changes by its other mouthpiece, the Legislature. The same argument that deduces the legislative power of Congress from the jurisdiction of the national courts tends to establish the legislative power of the state where Congress has not acted. Accordingly it has been held that a statute giving damages for death caused by a tort might be enforced in a state court, although the tort was committed at sea. American Steamboat Co. v. Chase, 16 Wall. 522 [21 L. Ed. 369]. So far as the objection to the state law is founded on the admiralty clause in the Constitution, it would seem not to matter whether the accident happened near shore or in mid-ocean, notwithstanding some expressions of doubt."

I find nothing in Workman v. New York City, Mayor, etc., 179 U. S. 552, 21 Sup. Ct. 212, 45 L. Ed. 314, to the contrary.

Now, if it be true that it is competent for a state by local law to give an auxiliary lien to secure the fruits of the enforcement of a common-law remedy, that a state may also afford a survival action, where none previously existed at common law, which may be enforced as a common-law remedy, and may even give a remedy where none previously existed which may be enforced as a common-law remedy, why is it not competent for the state to afford to laborers a remedy against employers which may also be enforced as a common-law remedy? Such a remedy would seem naturally to be comprised by the saving clause, and assuredly the common law is competent to give the remedy. This is all that may be said of the statute—that it gives a remedy; one perhaps unknown to the common law, but one which will be enforced as a common-law remedy. While it may be true that admiralty will not enforce the remedy, even by libel in personam, yet it is not an encroachment upon admiralty jurisdiction, in the sense of the United States Constitution and laws of Congress, because it is excepted from that jurisdiction by the saving clause.

Furthermore, this is not an action upon a marine contract, where the law of the sea becomes of the essence of the contract and must be enforced according to that understanding; but it is a tort, and, while committed upon water, is subject, nevertheless, to a common-law remedy. A tort is without terms or conditions, except as the law defines them, and, being a creature of the law, the law may also create a remedy; and if the remedy is one at common law, it may be enforced in the state courts, or in the federal courts where there is diversity of citizenship, although the tort be committed upon navigable waters within the boundaries of the state.

With all due deference to the able and exhaustive opinion of Judge Killits in Schuede v. Zenith S. S. Co. (D. C.) 216 Fed. 566, I am unable to agree with his conclusions.

The demurrer to the answer will be sustained.