**Andrea PADUANO, Plaintiff-Appellant,**

v.

**YAMASHITA KISEN KABUSHIKI KAISHA and Norton, Lilly & Company, Defendants-Appellees.**

**No. 122, Docket 23256.**

United States Court of Appeals Second Circuit.

Argued Jan. 7, 1955.

Decided April 5, 1955.

**616**

Murray S. Lokietz and Alfred R. Sandominick, Brooklyn, New York (William A. Blank, Brooklyn, New York, of counsel), for plaintiff-appellant.

Kirlin, Campbell & Keating, New York City (Roland C. Radice, Louis J. Gusmano and Vernon S. Jones, New York City, New York, of counsel), for defendants-appellees.

Before SWAN and MEDINA, Circuit Judges, and DIMOCK, District Judge.

MEDINA, Circuit Judge.

Plaintiff, a citizen of Italy, domiciled in the United States since 1946, instituted this action against Yamashita Kisen Kabushiki Kaisha, a foreign corporation, owner of the vessel "Yamashita Maru," and its general cargo agent, Norton, Lilly & Company, a domestic corporation, to recover damages for personal injuries claimed to have been sustained while plaintiff was engaged in unloading the "Yamashita Maru" at its pier in Brookyln, New York. Plaintiff, at the time, was employed by John T. Clark and Son, a stevedoring concern, not a party to this action.

Suit was commenced in the District Court for the Eastern District of New York on the civil side, plaintiff alleging theories of recovery cast in terms of negligence and unseaworthiness and demanding a jury trial. Defendants moved to dismiss the complaint for want of jurisdiction and the court below, under

the apprehension that the Jones Act, 46 U.S.C.A. § 688, was applicable, denied the motion. On motion to reargue, however, it was determined that the jurisdiction of the court could not be sustained on that ground and the motion to dismiss was granted, the court holding that, in the absence of diversity of citizenship, a district court lacks jurisdiction to entertain an action on its civil jury side based upon the general maritime law. This appeal is taken to review the order directing the entry of the judgment of dismissal.

Preliminarily, it should be noted that plaintiff's renewed reliance on the Jones Act as a basis for jurisdiction in this case is misplaced. The Supreme Court has held that the statute affords a right of recovery only against employers, Cosmopolitan Shipping Co. v. McAllister, 1949, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692, and no employer-employee relationship existed between the parties to this action.

The principal contention advanced to support the claim that jurisdiction exists on the civil side, even in the absence of diversity, is predicated upon the assertion that all cases in which the maritime law constitutes the substantive foundation for plaintiff's claim are cases "wherein the matter in controversy * * * arises under the Constitution, laws or treaties of the United States", within the meaning of Section 1331 of Title 28 of the United States Code. In substance, plaintiff advances the arguments expressed by Chief Judge Magruder writing for the First Circuit in Doucette v. Vincent, 1 Cir., 1952, 194 F.2d 834, holding that, in the absence of diversity of citizenship necessary to confer jurisdiction under 28 U.S.C. § 1332, a federal district court on the civil jury side, has jurisdiction under 28 U.S.C. § 1331, of a suit for money damages to enforce rights under the general maritime law. Relying principally upon the line of cases [1] begin-

1. See, e. g., Chelentis v. Luckenbach S.S. Co. Inc., 1918, 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171; Knickerbocker Ice Co. v. Stewart, 1920, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834; Garrett v. Moore-Mc-

Cormack Co., Inc., 1942, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239; Pope and Talbot Co., Inc., v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143.

ning with Southern Pacific Co. v. Jensen, 1917, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, which appear to indicate that "the general maritime law * * *, by force of the Constitution, had become part of our national law applicable to matters within the admiralty and maritime jurisdiction",[2] the court, in Doucette, concluded that suits based upon the general maritime law must necessarily "arise under the Constitution" within the meaning of Section 1331. But plaintiff here goes further and argues that, since maritime law is federal law, this action must also be considered as "arising under the laws of the United States" as well as "under the Constitution". The last link in plaintiff's reasoning is his reliance on the "saving to suitors" clause of Section 1333, which, it is urged, by "saving to suitors in all cases all other remedies to which they are otherwise entitled", removes any impediment to jurisdiction on the law side which might have resulted from the otherwise exclusive grant of jurisdiction in maritime and admiralty matters to the district courts sitting in admiralty.

Much has been written on this interesting and important question and the authorities are reviewed in the scholarly opinion of Judge Bruchhausen in this case, whose order of dismissal is based principally upon the reasons given by the Third Circuit in support of its decision in Jordine v. Walling, 3 Cir., 1950, 185 F.2d 662, where it is noted in passing that the adoption of a contrary view would effect a vast increase in the workload of the already overburdened district courts.

As the conflict must ultimately be resolved by the Supreme Court, it would suffice to say that we are in agreement with the conclusion arrived at by the Third Circuit, but for the fact that, while we concur in the result, our line of reasoning, which we shall briefly state, is somewhat different and may contribute its mite to the solution of the problem.

It seems clear that the "saving to suitors" clause makes no affirmative grant of jurisdiction but merely excepts from the exclusive admiralty or maritime jurisdiction of the United States District Courts all cases in which suits may be brought to obtain other than admiralty remedies to which suitors are "otherwise entitled." Accordingly, unless plaintiff is "otherwise entitled" to a remedy at law under Section 1331, the modifying clause of Section 1333 will not be of any avail to him.

The Constitution declares in Article III, Section 2, that the judicial power of the United States shall "extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, * * * to all Cases of admiralty and maritime Jurisdiction". The Judiciary Act of 1789, adopted two years later, granted to the district courts, by its Section 9, jurisdiction "of all civil causes of admiralty and maritime jurisdiction".[3] We are primarily concerned here, not with the question of whether American maritime law is federal or constitutional in character, but with a question of statutory interpretation. Except for an Act passed by the Congress in 1801[4] and shortly thereafter repealed,[5] the first broad grant to federal courts of original jurisdiction of power to adjudicate all civil actions arising "under the Constitution, laws or treaties of the United States", was by the Judiciary Act of 1875.[6] The language of the grant is taken from Article III, Section 2, of the Constitution, above quoted; and it has remained the same over the years and is to be found in the present Section 1331 of the Judicial Code. We must examine

2. See Doucette v. Vincent, supra, 194 F.2d at page 840.

3. Section 9, Act of Sept. 24, 1789, 1st Cong., 1st Sess., Chap. 20, 1 Stat. 73, 77.

4. Section 11, Act of Feb. 13, 1801, 6th Cong., 2nd Sess., Chap. 4, 2 Stat. 89, 92.

5. Section 1, Act of March 8, 1802, 7th Cong., 1st Sess., Chap. 8, 2 Stat. 132.

6. Section 1, Act of March 3, 1875, 43 Cong., 2nd Sess., Chap. 137, 18 Stat. 470. See Hart and Wechsler, The Federal Courts and The Federal System, pp. 727–730 (1953).

the available data, pro and con, and determine whether it was the intention of the Congress to include in its grant of "arising under" jurisdiction any power to adjudicate claims made pursuant to the general maritime law.

Judicial utterances regarding the content of the "arising under" phraseology in relation to admiralty and maritime cases, made prior to 1875 and at a time when no grant of jurisdiction over "arising under" cases was in effect, must necessarily be those concerned with the interpretation of the language of the Constitution.[7] In this connection, the Supreme Court, in American Insurance Co. v. Canter, 1828, 26 U.S. 511, 7 L.Ed. 242, declared that the class of cases falling within the "arising under" clause were wholly distinct from those included within the phrase "admiralty and maritime Jurisdiction" within the meaning of the Constitution.[8] Between the time the Canter case was decided and the passage of the Judiciary Act of 1875 in which Congress apparently purported to confer jurisdiction precisely coextensive with the limits of the Constitutional grant of judicial power,[9] there is no evidence of legislative or judicial recantation or of any disinclination on the part of the Congress to accept the Supreme Court's earlier exposition with regard to this matter as authoritative. In addition,

throughout this period, the maritime character of controversies continued to be treated as a single, independent source of jurisdiction requiring litigants to proceed in admiralty, and if proceedings at law were sought, a wholly distinct basis of jurisdiction was required to be established.[10]

In this historical setting, we must look to the available evidence to determine whether there is affirmative indication that the Congress, in vesting jurisdiction over cases "arising under the Constitution or laws of the United States" intended the inclusion of admiralty and maritime matters and an alteration of the prior treatment of such controversies in the federal courts. We find none. Instead, we find the pattern of legislative handling and other cogent considerations pointing to the opposite conclusion. First, the primary policy for investing the federal courts with "arising under" jurisdiction, viz., to insure the availability of a forum designed to minimize the danger of hostility toward, and specially suited to the vindication of, federally created rights,[11] does not support and, indeed, points to the absence of any necessity for the inclusion of admiralty and maritime matters, since such a forum had always been available. Second, from 1875 to the present, Congress has continued to provide for a wholly

7. There is some doubt as to the identity of scope of the constitutional and statutory language (see Hart and Wechsler, supra, pp. 749–752), but it is certainly clear that the statute can be no broader in meaning than the provision in the Constitution.

8. "The constitution certainly contemplates these as three distinct classes of cases; and if they are distinct, the grant of jurisdiction over one of them, does not confer jurisdiction over either of the other two. The discrimination made between them, in the constitution, is, we think, conclusive against their identity." 26 U.S. at page 544, 7 L.Ed. 242.

9. "The most significant bit in the legislative history was a statement of Senator Carpenter, who was in charge of the bill. Speaking of the bill as a whole * * * (he) said:

'* * * The act of 1789 did not confer the whole power which the Constitution conferred; it did not do what the Supreme Court has said Congress ought to do; it did not perform what the Supreme Court has declared to be the duty of Congress. This bill does. * * * This bill gives precisely the power which the Constitution confers—nothing more, nothing less.'" Hart and Wechsler, supra, p. 750.

10. See, e. g., The Belfast, 1868, 74 U.S. 624, 19 L.Ed. 266; Leon v. Galceran, 1870, 78 U.S. 185, 20 L.Ed. 74; American Steamboat Co. v. Chase, 1872, 83 U. S. 522, 21 L.Ed. 369.

11. See, Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law and Contemporary Problems 216, 223–234 (1948).

separate admiralty and maritime jurisdiction [12] and has authorized the promulgation by the Supreme Court of separate rules governing proceedings in admiralty.[13] Third, whenever the Congress has deemed it desirable to afford claimants the right to maintain an action at law or the right to trial by jury in maritime matters even in the absence of diversity, it has considered it necessary to make specific statutory grants of these rights.[14] Such special provision would hardly have been necessary had the Congress not considered matters affecting admiralty and governed by the general maritime law to be outside the purview of the "arising under" clause of the various Judiciary Acts passed since 1875. Fourth, to the extent that the Congress, in initially enacting and in later perpetuating the "saving to suitors" clause, apparently contemplated that plaintiffs were to retain some option to sue for common law remedies in the state courts,

it is hardly likely that it would, at the same time, water down this option by according the defendant the right to remove any such suit to the federal courts.[15]

In view of the persistence of this legislative attitude and in the absence of any indication that there are situations in which it has not prevailed, we are constrained to conclude that the Congress, in enacting Section 1331 and its predecessor provisions, intended to exclude from its scope, cases such as the one now before us, in which the general maritime law is the sole substantive basis for awarding the relief claimed in the complaint.

Accordingly, we hold that the motion to dismiss was properly granted.

Affirmed.

DIMOCK, District Judge (concurring).

---

12. See 28 U.S.C.A. § 1333 and the Historical and Revision Notes thereto.

13. "The Supreme Court shall have the power to prescribe, by general rules, the forms of process, writs, pleadings, and motions and the practice and procedure in admiralty and maritime cases in the district courts of the United States and all courts exercising admiralty jurisdiction in the Territories and Possessions of the United States." 28 U.S.C.A. § 2073.

14. "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located." 46 U.S.C.A. § 688.

"In any case of admiralty and maritime jurisdiction relating to any matter of contract or tort arising upon or concerning any vessel of twenty tons or upward, enrolled and licensed for the coasting trade, and employed in the business of commerce and navigation between places in different states upon the lakes and navigable waters connecting said lakes, the trial of all issues of fact shall be by jury if either party demands it." 28 U.S.C.A. § 1873.

15. "(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C.A. § 1441.

The fact that even at the earliest stages, this option had been somewhat diluted by permitting removal in diversity cases does not justify the inference that Congress, in enacting the "arising under" provision, was willing, for all practical purposes, to transfer the choice of forum in toto from plaintiffs to defendants.

The admiralty jurisdiction clause in its present form is embodied in title 28 U.S.C. § 1333(1) as follows:

"The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

"(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.'

There is no doubt that the "saving to suitors" clause is intended to save common law remedies and, since these are referred to as "other" remedies in the present form of the statute it is inescapable, under the letter of the present form, that common law remedies are not included in the grant of admiralty and maritime jurisdiction. That is as far as we go in the court's opinion.

I think, however, that we ought, in addition, to consider the effect of the admiralty clause in its original form since the Reviser's Note, hereinafter quoted, shows that Congress, in adopting the present form, thought that it was expressing the original intent of Congress. If we should find that the intent of Congress as expressed in the original form differed from its intent as expressed in the present form, we would be faced with the problem of deciding which expression to adopt. It seems to me important, therefore, to record a demonstration that the intent as presently expressed coincides with that as originally expressed. Since, therefore, we are contributing our mite to the solution of the problem, I venture to add my mote.

The admiralty clause in its original form is contained in section 9 of the Judiciary Act of 1789 *. By that section Congress declared:

"That the district courts shall have, exclusively of the courts of the several States, cognizance of all crimes and offenses that shall be cognizable under the authority of the United States * * * and shall also have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction * * * saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it".

These words "civil causes of admiralty and maritime jurisdiction" undoubtedly had the same meaning as the words in Article III, section 2 of the Constitution, "all Cases of admiralty and maritime Jurisdiction". The effect of the decision in Panama R. R. Co. v. Johnson, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748, is that those words embrace not only maritime remedies to enforce maritime substantive law but common law remedies to enforce maritime substantive law. Thus when Congress in the Judiciary Act vested the district courts with jurisdiction of all civil causes of admiralty and maritime jurisdiction, those words without more would have vested them with power to enforce maritime substantive law by common law remedies. The question is whether, by the addition of the "saving to suitors" clause, Congress evidenced an intention to withhold that power. My conclusion is that it did.

The "saving to suitors" clause may be interpreted in either one of two ways. First, it might be said to save common law cases from the exclusiveness of the grant. Second, it might be said to save them from the grant itself.

If the "saving to suitors" clause merely saves common law cases from the exclusiveness of the grant, it would mean that jurisdiction had been conferred upon the district courts to enforce maritime substantive law by both maritime and common law remedies but that this jurisdiction was not exclusive of the state courts in the case of enforcement by common law remedies. If the "saving to suitors" clause saves common law cases from the grant itself, it would mean that the district courts had no jurisdiction whatever to enforce maritime substantive law by common law remedies.

* 1 Stat. 76.

The choice between these interpretations is dictated by a further provision of the Judiciary Act of 1789. Section 9 of that Act which contains the grant of jurisdiction of "civil causes of admiralty and maritime jurisdiction" ends with this sentence: "And the trial of issues in fact, in the district courts, in all causes except civil causes of admiralty and maritime jurisdiction, shall be by jury."

I cannot escape the conclusion that the Congress which made that provision felt that the district courts to which it applied had been given no jurisdiction to enforce the maritime civil law by a common law remedy. There is room for the technical argument that the sentence does not say that causes of admiralty and maritime jurisdiction may not be prosecuted under the course and practice of common law remedies. It is true that all that it says is that there shall not be trial by jury in such cases. Nevertheless, the other incidents of common law procedure are so relatively unimportant that I cannot conceive of Congress thinking it worth while, after taking away trial by jury, to preserve the other incidents. The provision seems to me to indicate the intention of Congress that the district courts should have jurisdiction to enforce substantive maritime law only by maritime remedies. In other words, it indicates that the "saving to suitors" clause saves common law remedies from the grant itself so that the only courts left with jurisdiction to afford them are the state courts.

This conclusion accords with the view of the Reviser's Note to section 1333(1) of title 28 U.S.C., which reads in part:

"The 'saving to suitors' clause in said sections 41(3) and 371(3) [of title 28, U.S.C., 1940 ed.] was changed by substituting the words 'any other remedy to which he is otherwise entitled' for the words 'the right of a common-law remedy where the common law is competent to give it.' The substituted language is simpler and more expressive of the original intent of Congress and is in conformity with rule 2 of the Federal Rules of Civil Procedure abolishing the distinction between law and equity."

The view of Congress when it adopted the Revision must have been that the intention of Congress when the provision was originally adopted was that the grant itself did not embrace common law remedies. This appears from the description in the Revision of what had formerly been called "common law" remedies by the term " 'any other remedy' " i. e. any remedy *other* than the admiralty and maritime jurisdiction which had been conferred upon the district courts.